262 S.W.2d 330 (1953)
BUTLER
v.
BUTLER.
No. 28752.
St. Louis Court of Appeals. Missouri.
November 17, 1953.
Motion for Rehearing or to Transfer to Denied December 18, 1953.
*331 Walter Wehrle, Clayton, J. C. Jaeckel, St. Louis, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.
Edward O. Hancock, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied December 18, 1953.
ANDERSON, Judge.
This is a divorce suit brought by Martha F. Butler against Henry Jocelyn Butler. The grounds for divorce alleged in the petition were general indignities. The prayer of the petition was for a divorce and custody of the minor child of the parties, together with alimony and support money for said minor child. The defendant filed an answer and cross-bill. In said cross-bill defendant sought a divorce from plaintiff on the ground of general indignities. Thereafter, plaintiff and defendant entered into a property settlement in lieu of alimony. Defendant thereupon dismissed his cross-bill and the cause proceeded to trial on plaintiff's petition and defendant's amended answer. The trial resulted in a finding for plaintiff. By the decree, plaintiff was granted a divorce, custody of the minor child, and $300 per month for the support of said child. Defendant has appealed from that part of the decree awarding $300 per month for the support of the child.
The parties were married October 22, 1927, divorced November 30, 1945, remarried April 17, 1948, and separated October 15, 1951. Four children were born of the marriageAnn Jocelyn, Martha, Beatrice, and Mary Judith. Mary Judith is a minor, seventeen years of age. The three other girls are over twenty-one years of age, two of them being married.
At the time of the hearing Mary Judith was a student in a convent at Lake Forest, Illinois. She was at the time of the trial in her third year of high school. Her board and room at school is $1,025. Her other expenses as estimated by plaintiff are: spending money $270 a year; laundry $35 per month; uniforms $100; traveling expenses $150; clothes about $700 per year; food $260; other laundry and cleaning expense $80 per year; doctor and dentist bills, and medicine, $75; and maintenance of her horse $1,200 per year. The total estimated expense amounts to $4,280. Plaintiff testified that during the year previous it had cost about $4,000 to support her daughter. During the vacation period of three months Mary Judith lives at home with plaintiff. Plaintiff owns her own home in St. Louis County and has an income of her own, independent of anything received from defendant, of about $28,000 per year.
*332 Defendant is president of a lighting fixture business known as Butler-Kohaus, Inc. Defendant's yearly income was, at the trial, the subject of an understanding between counsel. The transcript shows said understanding as follows:
"Mr. Wehrle: Before taxes his income was $25,000 a year, and his taxes were $9,000. I think we have all agreed on that.
"Mr. Hancock: I think that is correct.
* * *
* * *
"Mr. Wehrle: * * * His income from business is $7200 a year, and his other income is from investments.
"The Court: So he has a net income of about $16,000 a year?
"Mr. Wehrle: Yes, your Honor."
Defendant testified as follows:
"Q. Mr. Butler, what is your gross income? A. Twenty-five thousand per year.
"Q. And what do your taxes per year amount to? A. Federal taxes approximately nine thousand dollars.
* * *
* * *
"Q. What is your salary or income from the business? A. Six hundred dollars per month.
"Q. And the remainder of your income comes from what source? A. Investments in various stocks."
Subsequent to the rendition of the decree, defendant filed a motion for new trial on the issue of the amount of support and maintenance for said minor, or, in the alternative, for a modification of the decree with respect to said amount. As grounds for said motion it was alleged that through inadvertence the testimony of defendant showed that his net income for the year 1952 amounted to $16,000, when in truth and in fact said income amounted to only $6,172.43, in view of which an allowance of $300 per month would be excessive, burden-some, unnecessary and inequitable. In said motion defendant also prayed that the court afford him an opportunity to introduce evidence in support of said motion.
The motion was thereafter presented to the court, at which time defendant's counsel requested the court to permit defendant to take the stand to testify in support of the motion. This request was denied on the ground that such evidence would be contrary to that given by the defendant at the trial, and contrary to the figures stipulated by counsel at said trial.
Defendant's counsel thereupon made an offer of proof in which he stated that if defendant was sworn as a witness he would testify that, through an honest mistake and misunderstanding of the questions put to him at the trial, he testified that his net income after payment of taxes was $16,000, when in truth and in fact his gross income from Butler-Kohaus, Inc., was $7,316.58, which, together with his income from other sources (detailed in said offer), made a total income of $24,489.58; that his taxes (detailed in said offer) totaled $10,704.48; that interest paid on loans totaling $157,700 amounted to $6,079.32; that the premiums on life insurance for the benefit of his children amounted to $1,449.35; that premiums on group hospital insurance for the benefit of his children amounted to $84; and that after deducting the amount of taxes, interest and insurance, his net income for the year 1952 amounted to $6,172.43.
Continuing with said offer of proof, defendant's counsel stated that Mr. Butler "will further testify that when he came down off the stand and sat behind his attorney, Walter Wehrle, he whispered in his ear and told him that the $16,000 net income was his net income after the payment of taxes, but it was not the net income after his taxes, his insurance premiums, and the interest on his indebtedness, and there was a misunderstanding between him and his counsel, and that matter was not corrected at that time."
Plaintiff's counsel objected to the foregoing offer of proof, which objection was by the court sustained.
*333 The transcript shows that defendant's counsel then made a further offer of proof, which is as follows:
"Mr. Wehrle: If I were sworn as a witness in this case, I would testify that positively we did not have an understanding about Mr. Butler's net worth after the payment of all taxes, and the payment of premiums on insurance, and interest on the loans; our understanding was, after the payment of Federal taxes, it was $16,000, and that was the beginning of the mistake that was made by counsel for Mr. Butler in this case; and it was an honest mistake, and I stated it honestly to the Court, honestly believing that his net income was $16,000 instead of some $6100.00 a year; and when Mr. Butler was on the stand * * * I asked him what his income was after the payment of taxes; he said $16,000, and he stepped down off the stand; and I understood that to mean that the net, after the payment of all just debts, including the payment on investments and insurance, that that was his net income; and after he left the stand he undertook to tell me that was not his net income; that he had insurance to pay on this $85,000 trust fund for the children, and he had interest to pay, and group insurance to pay, and I didn't understand it, and submitted it to the Court for a ruling, and the Court ruled and allowed $300.00 on the testimony made by the attorney and the defendant when his income was supposed to be $16,000 a year, when in truth and in fact his net income was never $16,000 a year; * * *."
The court sustained plaintiff's objection to said offer of proof.
After taking his appeal defendant filed in this court a motion for an order authorizing him to present, by his deposition, the testimony offered in support of his motion for new trial. This motion was sustained and said testimony was taken and returned to this court for consideration, if deemed admissible.
In said deposition defendant testified that his Federal income tax return for 1952 showed a gross income for that year of $26,467.62. Of this amount, $7,360.58 was derived from his business, and $1,667.91 in the form of rental received from two buildings he owned. The balance was income from his investments. The Federal tax paid on this return amounted to $8,334.29; State income tax $163.23; State real estate tax $712.51; sales tax $275; gasoline tax $45; telephone and amusement tax $150; State intangible property tax $15.88; withholding tax $1,370.80; Social Security tax $54; and St. Louis City Earnings tax $12.58.
Defendant further testified that in 1952 he paid to the First National Bank in St. Louis the sum of $4,198.38 as interest on a loan made at said bank; and paid $3,033.32 as interest on a loan at the Lindell Trust Company. He stated that his total indebtedness to the two banks amounted to $157,700, and that all of the securities which he owned were pledged as collateral for these loans. Defendant further testified that one of the parcels of real estate, being a building at 2823-25 Olive Street, was encumbered in the amount of $6,000, as of December 31, 1952, and that during the year 1952 he paid the sum of $277.38 as interest on said loan.
It also appears from defendant's testimony that during 1952 defendant paid the sum of $1,533.35 as a premium on a life insurance policy taken out for the benefit of his children, and a premium of $84 on a group hospital policy, also taken out for his children's benefit. The life insurance policy has been in force for about twenty-five years and has a loan value of about $20,000.
On cross-examination it was brought out that, according to defendant's Federal income tax return for the year 1951, his gross income was $28,762.03; for 1950, $27,228.21; for 1949, $32,348.29; for 1948, $31,831.96; and for 1947, $28,629.46.
Defendant further testified that the interest on his loans to the banks amounted to $5,295.05 in 1951; $4,561.86 for 1950; and *334 $4,238.88 for 1949. He stated that the increase in the interest payments from year to year, as shown by his tax returns, was due to increased borrowing, and an increase in the interest rates; that he borrowed from the banks to make the purchase of the two Olive Street buildings that he owned; that he borrowed $2,500 to finance his daughter's wedding, and $2,500 for a part of the purchase price of his daughter's home. He also stated he had to borrow to pay his taxes, and to support himself and family.
Defendant further testified that at the end of 1949 he owed the First National Bank $77,200; at the end of 1950, $92,700; at the end of 1951, the same amount; and at the end of 1952, the sum of $98,700. His indebtedness to the Lindell Trust Company was $55,000 at the end of 1949; $55,000 at the end of 1950; $57,000 at the end of 1951; and $59,000 at the end of 1952.
It also appears from the evidence that defendant has remarried.
Appellant contends that the allowance for the support of the minor child is excessive.
Respondent contends that appellant's complaint cannot be considered because no objection was made or exception saved to the finding and judgment of the court.
Respondent's contention is without merit. Section 510.310, subd. 4 RSMo 1949, V.A.M.S., provides that in cases tried without a jury there need be no objection to the judgment to authorize a review thereof. Formal exceptions to orders and rulings are abolished by Section 510.210 RSMo 1949, V.A.M.S.
It is also urged by respondent that the denial by the trial court of appellant's request to present additional evidence at the hearing on his motion to modify was, under the facts and circumstances, a proper exercise of judicial discretion. Said contention is not relevant to the issue on this appeal.
Our duty on this appeal is to try the case de novo and render such judgment as our conscience dictates. This we are required to do under the provisions of Section 510.310 RSMo 1949, V.A.M.S. Said section provides that in a nonjury case the appellate court shall review the case upon both the law and the evidence, as in a suit of an equitable nature. Said section also makes it the duty of the reviewing court to consider any evidence rejected by the trial court which has been duly preserved if the appellate court believes such evidence admissible.
With respect to the evidence offered and rejected, our problem is not to determine whether the trial court abused its discretion in refusing to admit said evidence, but whether this court in its discretion deems said evidence admissible.
It is a familiar rule of procedure in equity cases that where an appellant brings up the entire record, the appellate court will sift the testimony and separate the competent from the incompetent, regardless of the rulings of the trial court. Pfotenhauer v. Ridgway, 307 Mo. 529, 271 S.W. 50; Rinkel v. Lubke, 246 Mo. 377, 152 S.W. 81; Hiemenz v. Harper, 275 Mo. 380, 204 S.W. 723; Griffin v. Nicholas, 224 Mo. 275, 123 S.W. 1063.
In equity, where evidence excluded by the trial court is preserved in the record, it is the duty of the appellate court to admit or reject it as the right may appear. Graham v. Karr, 331 Mo. 1157, 55 S.W.2d 995.
In the case at bar the rejected evidence was properly preserved. The procedure followed by appellant in seeking to have the judgment modified is authorized by Sections 510.310 and 510.330 RSMo 1949, V.A.M.S. The latter section provides for the taking of additional testimony on motion for new trial, and the former section provides that the appellate court may order any evidence rejected by the trial court to be taken by deposition or under a reference and returned to the appellate court, as was done in this case.
At the time we ruled on appellant's motion for an order permitting the taking of said deposition, to preserve the rejected evidence, we considered the relevancy of said testimony, as set forth in the motion, *335 and the objection thereto filed by respondent, and concluded that appellant's cause had not been fully presented to the trial court, and that in the interest of justice the motion should therefore be sustained and the rejected evidence considered. We are still of that opinion, and will consider this evidence along with that preserved in the original transcript.
The amount to be allowed for the support of the minor children of divorced parents generally rests within the sound discretion of the court. In exercising this discretion the court should consider the needs of the child, his or her station in life, and the financial condition of the father. In no event should the father be placed under a burden beyond his ability to carry.
The evidence in the case at bar shows that while defendant had a gross income of over $25,000 for the last several years, he is burdened with debts and, as a result, is compelled to pay annually a large amount of interest. These interest payments should be deducted from his gross income in ascertaining the amount of his net earnings for the purpose of fixing the amount properly allowable as maintenance. Robinson v. Robinson, 268 Mo. 703, 186 S.W. 1032.
After deducting taxes and interest paid, defendant's net income, in our opinion, is such as to make an allowance of $300 per month for the support and maintenance of the minor child unreasonable and excessive.
Considering all of the facts and circumstances as shown by the record before us, we are of the view that an allowance of $150 per month would be adequate support for said minor child. Accordingly, the judgment ordering defendant to pay maintenance for the minor child in the sum of $300 per month is reversed, and the cause is remanded with directions to enter judgment for maintenance of said minor child in the sum of $150 per month.
BENNICK, P. J., and LAWRENCE HOLMAN, Special Judge, concur.