**C. Rex JEANS, Plaintiff-Appellant,**

v.

**Patricia Jane JEANS, Defendant-Respondent.**

No. 7961.

Springfield Court of Appeals.

Missouri.

July 12, 1961.

**146**

Stanley P. Clay, Emerson Foulke, Joplin, for appellant

Ralph Baird, Joplin, for respondent.

McDOWELL, Judge.

This appeal is from a judgment of the Circuit Court of Newton County, Missouri, rendered September 19, 1960, upon motions of both parties to modify a divorce decree.

Plaintiff and defendant were divorced in Newton County, March 2, 1954. Defendant was awarded a divorce on her cross-motion and granted alimony of $1,000 and monthly payments of $350 for the first 18 months, and, thereafter, $250 per month until her death or remarriage. Plaintiff was awarded care and custody of the three minor children with visitation rights to the defendant at reasonable times.

October 20, 1955, plaintiff filed motion to modify this original divorce decree asking permission to remove custody of the minor children from Missouri to Oklahoma. To this motion defendant filed answer and a cross-motion to modify asking that she be granted custody of the minor children with an allowance for support and that the monthly alimony provision be changed to alimony in gross.

On January 12, 1956, defendant filed a motion for suit money and attorney fees to defend in plaintiff's motion for modification. This motion was by the court sustained and plaintiff perfected an appeal from such action to the Springfield Court of Appeals where the trial court's judgment was reversed and remanded. See Jeans v. Jeans, Mo.App., 300 S.W.2d 870.

After this appeal plaintiff dismissed his motion to modify leaving pending defendant's cross-motion. Certain legal questions were raised in the trial court as to the validity of the original decree granting alimony. The trial court rendered judgment in favor of defendant and plaintiff, again, appealed to this court where this judgment was reversed and remanded for further proceedings. See Jeans v. Jeans, Mo.App., 314 S.W.2d 922.

After this appeal plaintiff filed answer to defendant's cross-motion and, later, on

January 12, 1958, re-filed his motion to modify the original divorce decree on new and additional grounds, asking for permission to remove said minor children to his ranch in Oklahoma. To this cross-motion defendant filed answer and, thereafter, re-filed her motion for attorney fees, which motion was taken up with the case and judgment rendered allowing defendant $600 for attorney fees.

Defendant's motion to modify is rather lengthy. The changed conditions alleged were:

That since the decree of divorce plaintiff has remarried to one, DeJean Burnett, who is now in active charge of the infant children and that they are actually in her care and custody; that said present wife and plaintiff, by various means, are attempting to and are alienating the affections of such children from defendant and attempting to establish in their minds a feeling that the present wife of plaintiff is their mother and to erase from their minds their natural love and affection for defendant.

That the children have not and are not now being treated with love and affection to which they are entitled, but have been and are now being abused and mistreated and raised under the atmosphere of fear and restraint and are dissatisfied and unhappy in their present home.

That plaintiff has violated the decree of the court giving her the right to have such children at reasonable times for visiting in her home; that plaintiff has ordered her to stay away from his home and has threatened to shoot her if she attempted to visit the children.

That at the time of the decree defendant had no home where she could care for said infant children but that she now maintains a home adequately furnished in Joplin and can properly and efficiently care for them.

That the present wife of plaintiff displays an antagonistic attitude toward defendant, refusing her the right to talk to the children over the telephone and to furnish defendant information concerning the health, welfare and location of them and has refused other information concerning them; that defendant has been refused by plaintiff the opportunity to have the children in her home in violation of his agreement and in violation of the spirit of the court's decree.

That plaintiff has displayed toward defendant a bitter and uncompromising attitude concerning the children and refuses to even discuss with defendant their welfare and best interest and tells her the children are none of her business; that this conduct on the part of plaintiff in failing to cooperate with defendant so that they would possess love and affection for both parents is harmful and derogatory to the best interest and welfare of the children.

That plaintiff, since the granting of the decree, has informed defendant that she should not participate in Parent-Teachers work.

That since the granting of the divorce decree, the major part of plaintiff's time is devoted to business activities and he is now unable to devote to such children the required attention they should have and that their care should be with their mother.

The motion alleges that defendant sustains a good moral character and is a fit and proper person to have care and custody of the children.

Since defendant has been denied modification as to alimony it is unnecessary to set out the allegations pertaining thereto.

Plaintiff's application for modification alleged: That since the decree of divorce plaintiff is no longer gainfully employed; that in the spring of 1955 he purchased a farm in Oklahoma in order to engage in stock raising business; that this will be his principal vocation in the future; that he has placed his residence in Newton County, Missouri, on market for sale; that the proposed residence in Oklahoma is ac-

cessible to good schools and churches; that the children will have advantage of pleasant and helpful rural life which will benefit them mentally, morally and physically; that plaintiff is willing for defendant to have the right of reasonable visitation as the court might provide and respectfully asks the court to permit him to remove the children from Missouri to Oklahoma and establish a permanent residence there.

Defendant filed answer denying the allegations alleged in plaintiff's motion to modify.

The cause was tried by the court October 19, 1959, and judgment rendered September 19, 1960. By this judgment the court sustained defendant's motion to modify as to the custody of the daughters, Terry Frances and Kris Irene, awarding defendant their care, custody and control during the school year, with leave to plaintiff to have them visit him at his ranch for one week end each month, for one-half of their Christmas holidays, and for at least six weeks during summer school vacations, if they so desire.

The court denied defendant's motion to modify as to the son, Michael Rex, and denied plaintiff's motion to modify as to the daughters but sustained plaintiff's motion and awarded him custody of the son and the right to take him to his ranch in Oklahoma upon condition that arrangements be made for the defendant to have him with her for week end visits, at least once a month, and requiring plaintiff to furnish surety to the court in the sum of $5,000 that he will arrange said visits when he moves to Oklahoma.

The court's judgment decreed that plaintiff furnish the court with surety in the amount of $5,000 for the peaceable return promptly to the state of Missouri, upon occasions when the daughters, or either of them, visit him in Oklahoma.

It decreed that plaintiff pay to defendant $125 per month for the support of each daughter, and, in addition, to pay defendant all medical, dental and hospital bills which may be incurred by said children.

The judgment decreed that defendant's motion to modify the decree as to the payment of alimony be denied and that plaintiff's motion to modify payments of alimony also be denied.

The decree sustained defendant's motion for attorney fees and allowed her the sum of $600.

The record contains some 398 pages of pleadings and evidence, together with numerous depositions and exhibits. We here state such part thereof as necessary for judgment on the issues presented.

Defendant testified that there was born of the marriage three children, Terry Frances, at trial date 15 years of age, Michael Rex, 13, and Kris Irene 11; that she lives in a furnished, two-story house in Joplin, for which she pays monthly rent of $50. She stated that plaintiff lives in the home she and plaintiff built, which is an extremely nice home.

Defendant's evidence is that during the time she was not receiving alimony she was employed at a weekly wage of $35 but that she is not now employed.

She stated that by the terms of the divorce decree she was given rights of visitation at reasonable times; that she and plaintiff have been unable to work out satisfactory understandings as to rights of visitation over the past several years. She gave this evidence:

"Q. Have you from time to time, and has he from time to time, the two of you, endeavored to arrive at some scheduling of the children where you might be able to see them? A. We have tried.

"Q. Will you, briefly, state to the Court what this understanding ultimately became? * * * A. Well, get the children on approximately the second week end of each month, I get them for four hours, from

5:00 o'clock in the evening until 9:00 o'clock. * * * since last May that has just been my boy. Then on the fourth week end of each month I get them from 5:00 o'clock Friday evening until 7:00 o'clock Sunday evening; and that also, since last May, has just been my boy."

She testified that it had been two years last June since Terry visited her; that at the last visitation of the children there was question about attending a show; that defendant and the three children wanted to go to the show but to do so would require the keeping of them ten minutes past the time that had been agreed upon. She stated she had telephoned plaintiff at other times asking that the period of visitation be extended and had been turned down; that on this occasion she asked Terry to call her father to get his consent, which she did, and he said "no". She then said, "And I said then that I believed that I would—my patience gives out once in a while on some of these arrangements, and I said, well, I believed I would just take them to the show for once anyhow and get them home at 9:30 and just take the consequences, and she refused to do it that way, * * *. I think I got a little bit childish about the whole thing and I said 'Well, now, who are you going to mind, are you going to mind your father or are you going to mind me?' " Witness gave it as her opinion that Terry believed she was trying to get her to disobey her father.

After this occasion, witness testified Terry visited her one week and they got along just fine, worked out an arrangement for the summer whereby "the children could spend a week with me for each week end, and she spent a week with me and was planning on spending the other two weeks with me at the end of the summer, and we talked about it, we planned what we were going to do, we made out plans where we were going to go, and then she did not come on the other two weeks." She stated that Terry made no explanation for her not coming. She testified:

"Q. Now, has it been your desire from that time up to now that she fulfill at least these minimum visitations to you? A. Well, I wouldn't want to force the girl to do anything that she doesn't want to do, no."

Witness testified that she felt that the child had become alienated toward her; that she was scared to death to speak to her if her step-mother or father were anywhere close; that if the child was by herself she would look both ways and then "wave or something".

Defendant testified that on an occasion within the last year when she took the children home, plaintiff and Mrs. Jeans were out of town. That at the time she arrived Terry brought her things out to the car to show her, her sewing, which she was very proud of. She stated: "And we were laughing, very tickled over the fact that we are exactly the same size and we wear the same size clothes now, which we were talking over, and we like the same colors, and we even wear the same size shoes. And Kristie, very kiddingly, made some sort of remark to me, and Terry jumped on her about it, and she said, 'You shouldn't talk to your mother like that.' And Kristie looked at her kind of funny and she said 'What do you mean?' And she said 'Well I—you're not being polite to your mother. After all, I'll have you know that you've got the nicest mother that ever walked on two feet.' And Kristie looked at her kind of funny, and said 'I've been trying to tell you that for a year.' "

Witness testified that up until the end of the school year 1959, the first of June, Kristie fulfilled those Friday night, once a month, visits; that there had never been any difficulty between Kristie and her but, after that, she discontinued her visitation although defendant had presented herself to their home to get them.

She stated that for the first year after the divorce she received the report cards of the children and returned them within

the four day period but since that time had been refused them; that she asked the present Mrs. Jeans for the cards but was told she could not have them because they were taking them down to their grandfather.

Defendant stated that in order to be informed as to the children's progress in school, she had to get in touch with their teachers; that she has not been able to discuss, from time to time, with the present Mrs. Jeans, over the telephone, the progress of the children and their daily affairs, although she has tried. Witness detailed an occurrence which took place at a Parent-Teachers meeting. She said the parents were asked to stand and identify themselves and their children; that the present Mrs. Jeans stood and said "Well, I am Mrs. Jeans and I have three children, Terry, Mike and Kris". She testified that she then got up and said "I am Mrs. Jeans, I have three children, Terry, Mike and Kris"; that this happened on other occasions and caused confusion.

She testified that her ex-husband had married the present Mrs. Jeans in 1954 and they have a child, now approximately four and one-half years of age. She testified:

"Q. During the school year, do you know whether or not these children were taken care of by Rex or by his present wife? A. By his present wife."

She said that plaintiff stays down on the ranch and the children go down there on week ends. She gave this evidence:

"Q. Have the children stated that they like to go down there? A. The two girls do very much because they are both—oh, my oldest girl has always had kind of an idea that she would like to be a veterinary, so she thinks it's great. * * *"

She stated that the girls loved to ride; that they learned to ride almost before they learned to walk, had horses and that is their main interest. She stated:

"Q. Have you been able to discuss their welfare face to face with their father? A. Yes, I have several times."

She said that during her work she found it was necessary to alter the third Friday of the month to the second Friday; that in order to make this change she had to telephone her attorney, who called plaintiff's attorney, who had to consult Rex to find out if it was agreeable.

She said she felt that she had the physical environment in which she could have the children for more extended visits; that she opposed the court modifying the decree to permit plaintiff to take the children to his ranch in Oklahoma. She said "It's been difficult enough to work out anything or to keep a working arrangement going with the children right in Joplin."

Defendant testified she lived three miles from plaintiff's home; was required to come for the children; that since the divorce plaintiff had told her that the children were none of her business; that she felt they were not getting proper dental care, but admitted she had been unaware that plaintiff had had the children treated by doctors until she learned of it when depositions were taken.

Defendant's evidence was that at the time of the granting of the divorce and up until June 4, 1955, she was addicted to the use of intoxicating liquor; that she was an alcoholic but that for the last several years she had quit drinking, had interested herself in civic problems of the community, belonged to various social organizations and was a member of St. Phillip's Episcopal Church in Joplin and had been engaged in setting up a welfare clinic within the church.

Defendant testified that both Kristie and Terry had belonged to the Brownies and that Terry was at one time a Girl Scout but that both girls had discontinued their connection with this work. She testified she had not been consulted about such matters.

She testified she had no income except $250 per month alimony and asked the court, in case he granted her custody of the children, to award her money for their support.

Defendant stated that if plaintiff, prior to his marriage, had brought the children to her for a visit and she was drunk and he had to take them back she did not remember such occasion.

Defendant admitted that after plaintiff's marriage he had purchased a new car for her and that it was a complete surprise; she stated it was not a hardship for her to call for the children. She admitted that visitation arrangements had been made between her attorney and the attorney for plaintiff but said such arrangements did not work too well; that from time to time she had asked for a change of the date of visitation but it was practically like getting an Act of Congress to get the date changed. When asked about the trouble she had with Terry refusing to go to the show she stated: "I told her at one time that if she didn't mind me while she was at my house, and if she was unhappy at any time over there, that perhaps she had better take her things and take them back out to her dad's."

Defendant testified that it was not like plaintiff to keep Kris from visiting her. She said that Kris told her she felt, when she came to see her, she was making a choice, and, therefore, did not want to make such a choice.

She admitted that when she called for Kris that she told her she didn't want to go with her. Defendant said she wanted to go to the ranch and that she understood. She gave this evidence:

"Q. Now, you have talked freely with Mr. Jeans in person and over the 'phone in mutual conferences relative to the welfare of the children, have you not? A. Yes, sir."

Defendant has had three and one-half years of college training in the University of Southern California. She stated the last time she attended church was about a year ago and that it had been about two years since she attended Sunday School.

Defendant testified that on various occasions, since the divorce, she had had complete care and custody of the children.

Defendant's evidence was that up until June, 1954, she had gone to a number of bars and had done considerable drinking. She denied picking up men and taking them to her home but admitted she made a charge against some men who stole records from her but did not remember the circumstances; that she reported the theft to the police. Her evidence was that she associated with drunkards, both men and women, up until 1954, had been beaten up by two women in her home for associating with one of their husbands; had testified in the police court trial against said women but they were acquitted.

Defendant admitted being out on a party with men, shortly after the divorce, walking home, wading streams and losing her shoes. She admitted setting fire to a divan and calling the fire department but did not remember whether she had been drinking. She testified that in 1958 the present Mrs. Jeans was suffering from ulcers and admitted sending her a post card, which is in evidence as plaintiff's exhibit 5, and recites: "I don't get ulcers, I give them!" The trial court refused to let counsel examine defendant as to why she sent the card. She testified:

"Q. Now, Mrs. Jeans, from your testimony I take it that you have not been friendly with the present Mrs. Jeans, De-Jean Jeans. A. I wasn't friendly with her 17 years ago.

"Q. That was not the question. I wasn't asking you about 17 years ago. A. I have never been."

Witness stated that the marriage between plaintiff and his second wife did not help. She testified:

"Q. You would have objected to any woman who was entrusted with the supervision of your children and tried to be a mother to them, is that correct? A. Yes."

Defendant testified that plaintiff's arrangement, leaving the children with his present wife, gave her a feeling that it was an attempt to supplant her, the natural mother. She stated she hadn't been able to get along with the present Mrs. Jeans; that she objected to the children calling her "Mother"; that she, herself, called her "Grandma". She said that was for obvious reasons, one being, that she was older than defendant and gray headed, and, another was, her figure.

Defendant admitted that while in California, she wrote a letter to her children, which is in evidence as plaintiff's exhibit 6, and, in it, she stated: "Thank 'Grandma' for baby sitting for me so I could come out here and play and visit awhile." She said she knew Mrs. Jeans would read it and that she was referring to her. The trial court refused to let plaintiff show that this letter was written to show her disrespect for plaintiff's wife. Defendant gave this testimony:

"Q. Would you, after the divorce, on many occasions, and while you were intoxicated, call Mr. Jeans up at any time, day or night? A. I have called him, yes. I have called him in the evening and I have called him in the morning, yes.

"Q. And you have called him early in the morning, at five or six o'clock in the morning? A. I have.

"Q. And two or three o'clock in the morning? A. I don't remember doing that."

Defendant stated that after the girls refused to visit her she took the matter up with plaintiff and the situation was not remedied. When asked the manner in which she took the matter up she said she had her attorney do so. She did not know if it was done. While the court refused to strike this testimony it was clearly hearsay on her part.

Her evidence is that she engaged Mr. Baird as her attorney to represent her in relation to the motions for modifications of decree concerning the children and plaintiff's motion to remove them from the state. She testified she had no funds to pay for said legal service; that her attorney had consulted her on different occasions about the matter, had attended the taking of depositions of plaintiff and testified as to length of time her attorney had to work, etc.

Briefly, plaintiff's evidence was that at the time of the trial defendant was 38 years of age and lived at 622 Empire Avenue in Joplin; that he was 42 years of age and resided at 4330 Jackson Avenue, Joplin. He testified that he had spent his youth as an employee of the Tri-State Warehousing and Distributing Company and at the time of divorce owned 25% of the stock. On December 31, 1954, the Tri-State Corporation was sold but plaintiff remained as an employee and managing head thereof until June 1, 1958, at a salary of $40,000 per year. On June 1, 1958, his employment ceased and his income for that year was $15,000 before taxes. He has had no salary income since that time, being dependent entirely upon farm income. He testified that the value of his stock in Tri-State was $319,462.50 and his home was worth $25,000, making a total value of his estate of $344,462.50 at the time of divorce. He stated that the value of his stock, when sold, was greatly decreased by the payment of income tax. There was offered in evidence plaintiff's income tax returns for the years 1954 through 1958.

Plaintiff testified that after the sale of his interest in Tri-State he purchased a ranch of some 2,400 acres in 1954, which had a net worth of $149,200. at the time of the trial; that he and his wife hold the ranch in partnership and that his interest would be about $75,000 plus the cost of his

home $25,000, making his net worth at the time of trial about $100,000. He testified he owned some other property, to-wit, bank stock and a Farm and Home Savings account and a small account in a Vinita bank held jointly with his wife.

Plaintiff's testimony is that between the time of his divorce and marriage to his present wife, DeJean Jeans, which occurred June 26, 1954, he cared for the minor children by employing a housemaid. That since that time the present Mrs. Jeans has operated the entire household without a maid, has cared for the children by taking them to school, to their dancing lessons and has looked after their health in general and performed all duties usually performed by a conscientious and interested wife and mother.

We think plaintiff's evidence clearly shows that for the seven years the minor children have been in his custody and care they have been faithfully looked after and given the fatherly and motherly care that could be expected of any parents. There is no evidence in the record that the children have been in any manner neglected, therefore, we will not set out the testimony of Mrs. Jeans as to her part in the caring for the children during these years.

Plaintiff's evidence is that he is devoting full time and effort in the operation of his ranch; that at the present time he is keeping up two houses which costs too much money. He gave this evidence:

"Q. And then when do you see your family in Joplin? A. Well, I usually come to Joplin during good weather on usually a Tuesday evening, get in anywhere from 6:00 to 7:00 o'clock, and some other time I try to get up twice during the week. It's not always possible. And then the family comes down to the ranch on the week ends and we spend the week end there. And during bad weather where we can't do much outside, why, I come during the day.

"Q. Now, do your wife and children like the ranch? A. Yes, sir, they do.

"Q. And are they happy on the ranch without exception? A. Yes, sir."

Plaintiff testified that if the court modifies the decree by permitting him to move the children to his ranch he plans to send the two girls to the Vinita schools and Mikie to a boarding school for retarded children; that Vinita is the county seat of Craig County with a population of approximately 10,000 people. The ranch is 51 miles from plaintiff's present home in Joplin on U. S. Highway 66 and 6 miles from Vinita. He testified that at the ranch there is provided toys for Mike; that the children have their own ponies, ride and take care of them; that there are ponds on the ranch stocked with fish, which the girls enjoy and last winter the older girl started to learn to hunt. He said they rode the ranch and helped with the chores; that they are very well adapted to ranch life, like to help work with the cattle and are very good at it.

He testified the girls could hardly wait to get down to the ranch and never wanted to go back to Joplin. He said they would ride in rodeos and horse shows; that they had entered the girls in barrel races, etc. Plaintiff was asked if he considered the ranch a good place for the children and answered: "I think it's a good place for them. I think it's a good place for them to grow up, they're not running the streets, and they have all got an interest and they work at it." He testified he thought ranch life would benefit them physically, mentally and morally. He gave this evidence:

"Q. Now, Mr. Jeans, if you are permitted to move your family to your Oklahoma ranch, are you willing to produce the children in Joplin in accordance to any order of this Court? A. I would produce the children."

Witness testified he had paid up to date the alimony provided for in the divorce decree.

. Terry Jeans, the older of the girls, testified that she is a sophomore in high school. She gave this testimony:

"Q. You have not been visiting with, your mother for about two years, is that correct? A. Yes, sir.

"Q. Will you tell the Court, in your own words, the reason for this? A. We had a disagreement.

"Q. Well, just tell the Court what happened, just in your own way. A. Well, I think a week after Christmas we left the house and stopped and let the children get barbecued ribs and french fried potatoes, and then we went to, past the theater, and there was a movie on, and two of us had seen it but the other one hadn't and so we decided, for the other one, we wanted to go and see the movie, but we would have to go home and call daddy because it would run longer than we were supposed to be allowed to stay at her house. We went home and called daddy, and he said that no, we couldn't stay overtime because we were going to the ranch that night, and so we decided that it was O.K., so we would go home when we were supposed to. So I hung up, and she came in with her hands on her hips and asked what he had said, and I said we were going to the ranch and so we couldn't go to the show.

"Q. Well, what else happened? A. Well, then she said 'Well, you don't seem like you are very anxious to stay over here, and you don't seem like you are willing to fight an my side, so you can just gather up your little bag and get', and I did."

The two girls were in the court room and, at the close of plaintiff's case, he stated to the court that if the court desired, he could interview the children, the court declined.

The first alleged error is that there is not sufficient, competent evidence to support the judgment of the trial court sustaining defendant's motion to modify and granting custody of the two minor girls, Terry Frances and Kris Irene, to defendant.

In considering this alleged error it is the duty of the appellate court to review the entire record with primary regard for the best interest and welfare of the children involved. Richards v. Hayes, Mo.App., 320 S.W.2d 65, 68 [1]; Dansker v. Dansker, Mo.App., 279 S.W.2d 205, 209 [5]; Wilson v. Wilson, Mo.App., 260 S.W.2d 770; Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 73.

In the last cited case, the court stated: "* * * Our duty on appeal is to review the entire record with primary regard for the regnant principle that the welfare of the children is of paramount and controlling importance * * *." Fossett v. Fossett, Mo.App., 243 S.W.2d 625, 633 [3, 4]; Watts v. Watts, Mo.App., 325 S.W.2d 40; Section 510.310, subd. 4 RSMo 1959, V.A.M.S.

This section provides: "4. * * * The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The appellate court shall consider any evidence which was rejected by the trial court and duly preserved for the appeal when the appellate court believes such evidence to be admissible. * * *" Butler v. Butler, Mo.App., 262 S.W.2d 330, 334 [3] and [4].

Under the law the burden of proof was upon the defendant to show a change of conditions existing after the date of the original divorce based upon new facts, conditions and circumstances arising since the rendition of the decree.

In Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, 366 and 367 [2] and [7] the court stated:

"* * * However, such change of conditions is not enough to warrant a change in custody. It must also be shown that the welfare of the children demands a

change of custody. The test to be applied is stated by this court in Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 126, as follows: 'A provision once made becomes as conclusive as any other order or decree, and can only be modified on a showing of subsequently changed conditions. However, there is this to be borne in mind—that while proof of a change in conditions is a prerequisite to the modification of a decree, such proof does not necessarily require a modification, and no modification will be made unless the welfare of the child itself requires a change in the provisions for its custody.' * * *

"After considering all the evidence in this case we are of the opinion that plaintiff has failed to maintain the burden of proof which the law casts upon her in cases of this character."

In Samland v. Samland, Mo.App., 277 S.W.2d 880, 881 [1-5] the court stated: "It is now well settled that a motion to modify a divorce decree is an independent proceeding; that the motion is treated as the petition in an original action and must state a claim upon which relief may be granted, otherwise it is insufficient. The movant may be successful only upon proof of new facts, conditions and circumstances arising or coming into existence since the rendition of the original decree or a subsequent judgment of modification thereof. The subject of inquiry is not whether the original decree, or the modified decree, has been given its proper effect, but whether the substantial rights of the parties require that the decree shall be altered and modified on account of any facts occurring since the last hearing. The relief which is asked is not that the decree be enforced as written, but that it be modified to meet the new conditions. * * * The burden of proof rests upon the movant to establish such new facts, conditions and circumstances. Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 327–328; Prudot v. Stevens, Mo.App., 266 S.W.2d 756. It is equally well settled that the welfare of the child is the prime concern of the courts." Williamson v. Williamson,

Mo.App., 331 S.W.2d 140; Roberts v. Roberts, Mo.App., 292 S.W.2d 596, 597 [1, 2].

The law is so well settled that it is unnecessary to discuss more authority or even to discuss all the cases cited by plaintiff-appellant under this allegation.

The changed conditions in the instant case are: That appellant has remarried; that the present Mrs. Jeans is in charge of appellant's household and aids in the care and custody of the minor children involved; that respondent, since June, 1954, has ceased drinking and being an alcoholic, and for the past four years, has been actively engaged in the social life of her community; that she now occupies a furnished, rented two-story house which is a proper place for the children to live; is unemployed and can devote all of her time to the care of her children; that appellant no longer is connected with the trucking business in Joplin, but, since 1958, is devoting all his time to the operation of a 2,400 acre ranch in Oklahoma, which is some 51 miles from his home in Joplin; that there has been a changed condition in the earning power of appellant.

There is no evidence that appellant has surrendered his duties as father and custodian of the children. Respondent's evidence shows that when she wanted time extended in the visitation period she had her daughter, Terry, phone her father for permission to extend such time, and further, she testified that she had many times conferred with appellant about the welfare of these children and that she and appellant had attempted to make arrangements for periods of visitation.

We find that there has been a change of conditions shown by respondent's evidence, as above set out. However, such change of conditions is not enough to warrant the judgment of the trial court in modifying its decree awarding custody of the two girls to respondent. The evidence fails to show that the changed conditions require a change of custody for the welfare

of the children. Keeping the well known rule as to change of custody, declared by the courts, in mind, we have carefully considered the record evidence and reach the conclusion that the best interest of the two girls in question will be served by leaving them in the custody of their father. It has been more than seven years since appellant was awarded custody of these children and for most of said period there seems to have been little difficulty between the parties. The oldest, Terry Frances, is now more than 17 years of age and the youngest more than 13 years of age. The evidence shows they are happy and contented with their father, especially when they are with him on the ranch in Oklahoma. Respondent testified they have been riding horses almost since they could walk; that they are very anxious to accompany their father to the ranch and she said she did not blame them. It is clear to this court that we are not dealing with children of tender years but with young women who will, whether we decree it or not, determine their own custody. Respondent testified that the oldest girl had not visited her for some two years and stated that if the girl didn't want to be with her she didn't want to force her to be. According to the record, Terry's affections for her mother were not alienated by any acts on the part of appellant or his present wife but by difficulties which arose between Terry and respondent. In fact, respondent's testimony is that after this incident about the show, Terry did visit her for a week and all was well, but, after that, she failed to come, even though respondent called for her. She further complains that the younger girl, Kris, has not visited her for the past year but there is no evidence to show that the failure of this girl to visit her mother was, in any way, attributable to appellant or his present wife.

We find that the children have become adjusted in the home with their father and step-mother; that they have received excellent care; that their educational and spiritual needs have been adequately supplied.

We do not believe that the change of conditions shown, when considered along with the other facts and circumstances, especially when considered with the fact that these girls are almost grown, warrants a finding that the welfare of the children would best be served by awarding their custody to respondent. If the trial court's judgment is sustained the children's mode of living would be radically changed. They would leave a home where they have been for the last seven years and where they have received loving and tender care. They would lose contact with the pleasures they have learned to enjoy by going to the ranch.

Respondent stresses the fact that she is the natural mother and that they have been calling the present Mrs. Jeans "Mama". We find nothing in the record that would indicate that the present Mrs. Jeans was attempting to substitute herself for respondent as mother of the children. Respondent admitted in her testimony that she had disliked the present Mrs. Jeans for some 17 years and that the marriage to appellant did not help any. Her evidence further shows that she has insisted on trying to take part in the raising of these children, which duty was entrusted by the judgment of the court to their father. She complained of failing to get the children's report cards and that the present Mrs. Jeans, at Parent-Teachers meetings stood up and identified herself as having these three children in school. The court is not impressed by such petty contentions.

Respondent did not complain about the care of the children by appellant's housemaid, prior to his remarriage. It is clear to this court that the father must carry on his vocation and that he cannot at all times be in the home directing the training of his children. We think the evidence in this case is undisputed that the present Mrs. Jeans did render efficient care and did treat the children with love and affection, which had been denied them by their own mother for many years prior to the divorce and for some time afterwards. We find that even though appellant did spend his time oper-

ating the ranch that he never, at any time, released his control over his children. We might state, in passing, that it is admitted that Michael Rex is now in a special school for retarded children which, both parties admit, is necessary for his best welfare. We call attention to a letter written by respondent to her children wherein she called the present Mrs. Jeans "Grandma" and asked them to thank her for baby sitting with them while she was in California having a good time. We call attention to the admissions of respondent that she had learned of the present Mrs. Jeans having ulcers and sent her a post card which had printed on it that "I do not get ulcers, I give them". It is clear to this court that respondent so disliked the present Mrs. Jeans that she didn't try to get along peaceably with her.

Respondent testified that in the original decree she was given the privilege of reasonable visitations and that she and appellant had attempted to work out satisfactory arrangements but that they had not been able to do so. The record shows that the attorneys for the parties agreed on visitation periods but respondent complained that she sought at different times to change these periods and it was like getting an Act of Congress to have it done. This is no reason for the action of the trial court in changing custody of the children and it would have been an easy matter if the parties could not agree on reasonable visitation periods to ask the court to set definite times for such visitations, which the court could have enforced by citations for contempt. This, respondent never attempted to do.

We find that respondent has failed to meet the burden of proof in establishing conditions alleged in her motion to modify.

Appellant next contends that the trial court erred in refusing to reduce respondent's alimony payments and in adding $250 per month for the support of the two girls. Appellant says that the evidence conclusively shows that there has been a change in conditions as to his income since the original decree; that under the present circumstances the allowance is unreasonable.

To support this contention we are cited to Simmons v. Simmons, Mo.App., 280 S.W.2d 877, an opinion by this court. On page 880 [1–3], Judge Ruark, speaking for the court, stated:

" * * * but the rule of deference nevertheless exists and the allowance of alimony and attorney fees is a matter of sound discretion to be exercised with reference to established principles in view of all the circumstances of each particular case. * * *

"The statute, Section 452.070, RSMo 1949, V.A.M.S., provides that 'the court shall make such order touching the alimony * * * as, from the circumstances of the parties and the nature of the case, *shall be reasonable*'. While certain general principles apply, each case must be decided upon its own circumstances. It has been said that factors which almost invariably enter into consideration are the financial status of the respective parties, including the question of their individual estates, incomes, obligations and necessities; the contribution of each to the accumulated property; the probable future prospects of each; their respective ages, health and ability to follow gainful occupations; their stations in life; their children, if any; the duration of the marriage, and whether it was one of affection or convenience; and the conduct of the parties, with particular regard to the cause of the divorce and the relative or comparative responsibility of each other therefor."

Shapiro v. Shapiro, Mo.App., 238 S.W. 2d 886, relied upon by appellant, holds that a modification of judgment for alimony is dependent on the change in the circumstances of the parties between the time the judgment is entered and the time the motion is filed. On page 889 [2, 3] of the opinion the court stated:

"* * * The rule has been long established and applied in many decisions of our courts that in such a case as this (a non-jury case) an appellate court should not interfere with the findings and conclusions of the trial judge unless there has been a manifest abuse of judicial discretion by the trial judge. Furthermore, in resolving conflicts in the testimony the appellate court will defer largely to the findings of the trial judge because of his much better opportunity to judge of the credibility of the witnesses whom he has seen and heard whereas an appellate court has only the cold record to judge from."

 While it is true that the husband has changed vocations and now depends entirely upon the operation of a 2,400 acre ranch and some small investments in stock for his income, which obviously is much less than the income he earned at the time of the allowance of alimony in the original decree, we have set out the evidence relating thereto which clearly shows that appellant is yet a wealthy man. We further recognize that the remarriage of appellant creates additional burdens upon him, yet, remarriage, alone, is not sufficient for reducing the allowance of alimony where the divorce was granted because of the husband's fault. It is the purpose of the law to not require the husband to make payments beyond his reasonable ability to pay, as shown by the evidence. Section 452.070 RSMo 1959, V.A. M.S. In the instant case the evidence is clear that respondent has no income excepting the payments of $250 per month alimony. While she admits she is physically able to work, yet, she testified she is not qualified for any specific kind of work. The evidence shows that her expenses are more than the amount of alimony she receives.

Under the evidence in this case we find that the trial court did not abuse his discretion in denying appellant's motion to reduce this alimony and we find that that part of the trial court's judgment should be sustained.

Since we have reversed the trial court's ruling transferring custody of the girls we necessarily will reverse the judgment of the trial court allowing support money for them.

Appellant complains of the action of the trial court in requiring him to furnish surety to the court in the amount of $5,000 that he would arrange visits of the infant child, Michael Rex, to respondent, as provided, and for the peaceable and prompt return of his daughters after their visits to him. Appellant contends that the trial court is without statutory authority to make such requirement.

 By the decree of the court modifying the original divorce decree leaving the son in the custody of appellant and permitting him to remove said child to his ranch in Oklahoma and setting certain times of visitation of said boy with his mother, the court required surety to be posted by appellant to carry out the orders of the court. Under the evidence presented we think that the judgment of the trial court leaving the custody of Michael Rex with appellant and permitting him to be removed to Oklahoma, is a proper judgment. However, we find that this boy is a retarded child and is now placed in a special school for retarded children and the decree of the court determining the times of visitation might be injurious to the welfare of this child. Likewise, we find that under § 452.070 RSMo 1959, V.A. M.S., the court was without authority to require such bond. This statute provides that when a divorce is adjudged the court shall make such order touching alimony and maintenance of the wife and the care, custody and maintenance of the children as from the circumstances of the parties and the nature of the case, shall be reasonable and that the court may order appellant to give surety for such alimony and maintenance. It does not provide that the

court shall have power to provide surety for visitation periods of the children. We find that the court's power is statutory and, to sustain his action in this instance, we must be able to find such authority from the statute itself and there is none. Mangold v. Mangold, Mo.App., 294 S.W.2d 368, 369 [2]; 72 A.L.R.2d, § 3, p. 1260.

Under the conditions existing in the instant case the court's order fixing the visitation periods of Michael Rex is an abuse of discretion and the court was without power to require surety for the carrying out of such order. The judgment of the trial court will be reversed as to this finding.

 The last contention made is that the trial court erred in allowing $600 attorney fees to respondent for the defense against appellant's motion to modify.

Respondent's motion for attorney fees, in part, alleges that she is without funds to pay for legal counsel in connection with appellant's application for modification of the divorce decree; that she is advised by counsel that it will be necessary to make investigations in Oklahoma as to living conditions, schools and churches and other matters where appellant intends to move; that it will be necessary to take depositions and that respondent is without means to pay her attorney and costs and other expenses connected with said action.

We did not set out all of the testimony in the record relative to the services that respondent's attorney rendered in defending appellant's action for modification. Respondent testified she was without means to pay such attorney fees and costs; that she consulted with her attorney relative to such matters and that he did prepare and present her defense.

Appellant relies on Jeans v. Jeans, Mo. App,. 300 S.W.2d 870, an opinion rendered by this court relative to attorney fees. We held in that case that defendant, when asking for attorney fees in unusual amount

and suit money, must show the extent of the necessary services to be rendered by her counsel, and expenses incident thereto so that the trial court could base his decision upon the evidence for services and expenses in order that the appellate court might determine the correctness of the trial court's ruling.

In the instant case the evidence was sufficient as a basis for the trial court's judgment. When one examines this enormous record, the numerous depositions and exhibits, the bitter contest that appellant waged in attempting to modify the divorce decree as to allowance of alimony to respondent and as to the removal of the children from Missouri to Oklahoma, combined with the fact that appellant is the owner of a 2,400 acre ranch in Oklahoma, located on U. S. Highway within six miles of the county seat, together with the fact that he owns a valuable home in Joplin, Missouri, where he now lives, we think the judgment of the trial court was very reasonable in its judgment allowing $600 attorney fees. In fact, when we examine the record in the instant case and consider the evidence as to the services rendered, we might believe the allowance of attorney fees was actually too small.

The judgment of the trial court as to this issue is affirmed.

In appellant's printed argument, page 72, under a heading "The Motion for Permission to Move to Oklahoma", he states that the next question that arises is on the motion of appellant for permission to move his family from their residence in Joplin, Newton County, Missouri, to the Jeans ranch near Vinita, Oklahoma. We looked in vain to appellant's brief for the point relied on which would show what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authority, as provided by Supreme Court Rule 83.05, V.A.M.R., and we found none. While this point is argued at length

in the printed argument, he does not cite it as one of his allegations of error relied on in his points and authorities. We note that in the original decree of divorce wherein appellant was granted custody of the three minor children, the trial court did not require appellant to remain in the state of Missouri.

The question of the removal of the children to another state is discussed at length in Middleton v. Tozer, Mo.App., 259 S.W. 2d 80, 86 [9], in which the court stated:

"We do not believe that this statement is authority for holding that one who has been given complete custody of a child, in a divorce proceeding, before he may change his residence and that of his child to another state, must first obtain permission to move the child to the other state. This statement deals with the policy of the law where permission is requested and also deals with the power of the court to authorize removal when the best interest of the child will be subserved thereby. There is nothing in this statement of the law that would compel one given custody to permanently reside in this state. * *"

Appellant cites Fago v. Fago, Mo.App., 250 S.W.2d 837, 841, where the court said: "While generally speaking it is against the policy of the law to permit the removal of a minor child to another jurisdiction, the obstacle of non-residence is not an insuperable one and where it is clearly made to appear that the best interests of the child will thereby be subserved, the removal of a child will be permitted." (Citing much authority.)

We find from the evidence offered that there was sufficient evidence before the trial court to have granted appellant permission to remove Terry Frances and Kris Irene with his family to Oklahoma, but we will not pass upon this proposition for the reason that the appellant has failed to submit this issue to this court for determination.

The judgment of the trial court is reversed as to the changing of custody of Terry Frances and Kris Irene from appellant to respondent; it is likewise reversed as to the requiring of surety of $5,000 for compliance with the court's order as to visitation of Michael Rex to his mother and it is reversed as to requiring a surety of $5,000 to insure the return of the two minor girls when they visit appellant in Oklahoma and the allowance of $125.00 per month for each girl for support and maintenance. The judgment is affirmed as to the alimony allowed respondent of $250 per month and affirmed as to the allowance of attorney fees in the sum of $600. The judgment is, likewise, affirmed as to the custody of Michael Rex and the permission of appellant to remove said child from Missouri to Oklahoma.

Under the law this court is empowered to render such judgment as the trial court should have rendered under the facts. However, under the circumstances in this case, we find it is impossible for this court to render a judgment respecting visitation of the minor children with their mother and requiring appellant to comply with such order for the reason that at the time of this opinion we realize that Terry Frances is over 17 years of age and most probably a graduate of high school and ready for college; that Michael Rex is now 16 years of age and in a special school for retarded children. We are not in possession of facts that would justify us in making a specific order concerning the rights of visitation as to either of these minor children without knowing further about their intentions and educational requirements. It might be that Terry Frances would be in some university or college and a specific order would interfere with her educational opportunities. Likewise, it might interfere with the special training of the boy. It would appear that the youngest girl, is now 14 years of age and possibly in high school; that the court might render a specific judgment as to

her visiting her mother at specific times. We, however, remand this case to the lower court for judgment in accordance with this opinion, leaving the rights of visitation of the children with their mother, as provided in the original decree. If the parties are unable to agree as to visitation rights, a motion can be filed in the trial court and facts introduced showing the present conditions and circumstances and a proper judgment entered as to respondent's visitation rights with her children.

Judgment reversed and remanded with directions that the judgment of the trial court be modified in accordance with this opinion.

STONE, P. J., and RUARK, J., concur.