No. 21463.

ROBERT C. LAWS v. MARY L. LAWS.
(432 P.2d 632)

Decided October 23, 1967.

Sherman & Glaston, for plaintiff in error.

82

GEORGE T. ASHEN, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS writ of error stems from a divorce proceeding and concerns the propriety of the trial court's order concerning alimony, division of property and attorney's fees.

Mary Laws obtained a decree in divorce from her husband, Robert Laws. Thereafter, pursuant to R.C.P. Colo. 53, the trial court with the consent of counsel appointed a master to hear evidence pertaining to the unresolved issues of alimony, division of property and attorney's fees, and to then make written findings of fact and conclusions of law relative thereto. The master held a two day hearing on the matters thus referred to him and in due time filed a written report with the trial court. The trial court adopted the master's report "in full," and added an extra nail by stating that "each and every recommendation shall be the order of the court." Judgment to such effect was duly made a matter of record, and by this writ of error Robert now seeks reversal of the judgment thus entered.

Robert complains about the judgment entered against him in the following particulars:

1. the order that he pay Mary as permanent alimony the sum of $100 per month;

2. the order that he pay Mary's attorney as attorney's fees the sum of $500, which sum was in addition to the sum of $175 which he had theretofore previously paid as partial payment on any attorney's fees ultimately awarded;

3. the order that he make his two children the "irrevocable beneficiaries" of his insurance to the extent of at least $10,000 each during their minority; and

4. the order dividing the property of the parties, particularly insofar as such relates to the moneys derived from the sale of the family home and the disposition of certain household furnishings.

Some background information and discussion is now deemed necessary if there is to be any real understanding of the controversy. Mary's marriage to Robert was her second, her first husband, a professional pilot, having been killed in a plane crash. From this first marriage Mary had five children. Mary's marriage to Robert was of some three and one-half years duration, and from this union two children were born.

Both Mary and Robert brought to their marriage certain items of property. By way of employment, Robert was himself a professional pilot for a commercial airline. His gross salary was about $1,500 per month and his take-home salary was reported to be approximately $1,000 per month.

In her complaint Mary alleged that Robert stood *in loco parentis* to the five children of her *first* marriage, and she sought to compel him to support all seven of her children. The master refused to recommend the entry of any such an all-inclusive support order, and concluded that on the contrary Robert need only support the two children which he had himself fathered. In this regard the master determined that a fair and equitable support order would be that Robert pay the sum of $90 per month for each of his two children. As already noted, the trial court approved the master's report *in toto*. Neither Robert nor Mary makes any complaint about the support order thus entered by the trial court, but reference thereto is made in order that even the casual reader may get a glimpse of the entire picture. So much for a recital of the facts.

Our study of the matter leads us to conclude that the judgment of the trial court should be affirmed in all particulars, save and except as to that phase of the order which relates to the insurance policies and pro-

vides that the two minor children during their minority are to be "irrevocable beneficiaries" to the extent of $10,000 each. Let us consider, though, each of the matters here urged by Robert.

As concerns the alimony award, Robert's complaint is not so much to the dollar amount awarded Mary by the trial court, but primarily is directed to the fact that the trial court did not see fit to *limit* the period of time that Robert should pay such alimony to say, by way of example, three years.

■ Counsel agrees that the awarding of alimony and fixing the amount thereof rests within the sound discretion of the trial court and that its judgment in this regard will not be disturbed by us on review unless there has been a clear abuse of discretion. *Engleman v. Engleman*, 145 Colo. 299, 358, P.2d 864. But, according to counsel, indiscriminate and slavish application of the foregoing rule can only serve as a shield for the trial judge to the end that he could become a virtual dictator as concerns the very important matter of alimony. Counsel goes on to opine that in actual practice the "exercise of discretion" shown by the several judges who preside in the domestic relations division of the Denver District Court ofttimes varies "far greater than the traditional chancellor's foot." All of which, says counsel, tends to convert physically and mentally competent women into a veritable army of alimony drones, who neither toil nor spin. *Doyle v. Doyle*, 158 N.Y.S. 2d 909 (Sup. Ct.).

■ Notwithstanding the dire situation so graphically painted by counsel, we still find no abuse of discretion by the trial court insofar as its alimony award in the instant case is concerned. The descriptive language cited by counsel simply does not fit. We do not for one minute consider Mary to be an "alimony drone." And, no matter how physically and mentally competent Mary undoubtedly is, the fact still remains that under the circumstances she will not have the time

to obtain gainful employment outside the home. With seven children, two of whom were begot by Robert, Mary will have a full-time job tending the household. Robert's two children are of a tender age, and no doubt he himself would be the last to want Mary to shift the supervision and guidance of *his* children to a baby sitter, in order that she might obtain employment, be it full-time or part-time, in the busy work-a-day world. But if Mary is to stay in the home, she needs alimony, and we perceive no error in this particular phase of the judgment entered by the trial court.

██ Nor do we find any error on the part of the trial court in connection with its award of attorney's fees. That too is a matter which lies within the sound discretion of the trial court. It is quite true that Mary is not destitute and is neither figuratively, or literally, walking the street with not a place to sleep nor food to eat. On the contrary, Mary by virtue of the division of property order entered by the trial court, does have some assets; and by the same token, so does Robert. At the hearing before the master Mary's counsel, by affidavit, made claim for some $2,000 in attorney's fees. Counsel volunteered to take the witness stand and submit to cross-examination. Opposing counsel, however, did not avail himself of the opportunity, and on the contrary said that such was not necessary. And, counsel for Robert then agreed that the claim for attorney's fees was a reasonable one, but contended that, under all the circumstances, Robert should not be required to pay *anything* thereon. It was in this setting that the master recommended that of the amount claimed for attorney's fees, Robert should be required to pay the total sum of $675. And, this recommendation was approved by the trial court. This would appear to be a reasonably fair and equitable amount to assess against Robert. At least we cannot say that such determination constituted an abuse of discretion, and hence this particular portion of the trial court's judgment should also be approved.

██ That portion of the trial court's order concerning insurance policies about which Robert here makes complaint concerns the fact that Robert was ordered to keep in full force and effect insurance policies in which his children were to be the "irrevocable beneficiaries . . . to the extent of $10,000 for each of his children until such time as they are no longer minors." This particular order, as we understand it, was not intended to serve as security to insure enforcement of any orders otherwise entered by the trial court. A true "security" order is, of course, authorized by C.R.S. 1963, 46-1-5(3). Rather, as we view it, this was simply a very bald order that Robert carry sufficient insurance on his own life to the end that should he die, each of his two children would then receive $10,000. The power of a trial court in a divorce proceeding to order a father to support his children is not broad enough to encompass the aforementioned order of the trial court. It should be kept in mind that Robert is under order of court to pay the total sum of $180 per month for the support of his two children. The order of court concerning this particular phase of the insurance question in our view is at odds with the rationale in *Menor v. Menor,* 154 Colo. 475, 391 P.2d 473. See also *Giambrocco v. Giambrocco,* 161 Colo. 510, 423 P.2d 328.

██ In the foregoing particular, we generally subscribe to the following language found in *Miller v. Miller,* 52 Cal. App. 2nd 443, 126 P.2d 357.

"The purpose of the law is to continue in effect after divorce the same legal obligation of support which the father owes to the children from their birth to their majority, where the marriage continues throughout that period. This obligation does not include any legal duty on the part of the father to take out an insurance policy on his life in favor of each child. It may be a desirable thing for him to do, just as any other type of saving against future eventualities is commendable, but there is no law to compel it. It can hardly be contended that

the law places upon the divorced parent any greater obligation toward his children than he has in the absence of divorce. It follows that the entire portion of the decree appealed from, and providing for the keeping up of the insurance policy, is in excess of the power of the court."

 Finally, we perceive no error insofar as the order of the trial court concerning division of property is concerned. In essence, the trial court, acting upon the findings and conclusions of its master, awarded to each party that which was brought by the particular party into the marriage. Robert is particularly concerned about the division of the property as such relates to the family home. The evidence was that when Mary and Robert married, Robert moved into the home owned and then occupied by Mary and her five children. There was as of that time an outstanding indebtedness upon this home and after he moved in, Robert then commenced to make the monthly payments. It should be kept in mind that during the marriage, Mary also made financial contributions of her own to the expenses incurred in the running of the household. After the marital breakup Mary sold the house in question, and from the sale thereof made a modest profit of about $2,000. Robert now claims that he should have been given half of this profit. This house, it should be noted, was only a part of the property owned by the parties. Disposition of the proceeds from the sale of the house must, of course, be viewed in the light of the disposition of other items of property then owned by the parties. Suffice it to say that we find no error in the order of the trial court as it relates to the division of property of the parties, be it real or personal.

It is noted that counsel other than present counsel for Robert represented him in the proceedings in the trial court and in the proceedings before the master.

The judgment of the trial court is therefore affirmed, except as to that portion of the judgment which requires

Robert to maintain insurance on his life in favor of his two children, as irrevocable beneficiaries, to the extent of $10,000 for each child. That particular portion of the judgment is reversed and in this regard the matter is remanded with the direction that the trial court vacate the same.

MR. JUSTICE SUTTON not participating.