**June Johnson ANDERSON**

v.

**Charles Orville ANDERSON, Jr.**

**Nos. 25107, 25167.**

Kansas City Court of Appeals. Missouri.

Feb. 3, 1969.

Charles V. Garnett, Kansas City, for appellant.

R. B. Miller, Jr., Platte City, for respondent.

CROSS, Judge.

Case No. 25,107 is an appeal by plaintiff June Johnson Anderson from a judgment of the trial court denying her motion to modify a prior decree of divorce by increasing the amount allowed for support and maintenance of a minor daughter in order to provide additional funds for a college education, and by increasing plaintiff's alimony allowance.

Case No. 25,167 is an appeal by plaintiff from a subsequent order and judgment of the trial court awarding her the sum of $500.00 for attorney's fees and suit money for prosecution of her appeal in cause No. 25,107. It is her contention that the allowance should have been in a larger sum. Pursuant to stipulation by the parties, the two cases have been consolidated for review.

On November 15, 1962, plaintiff was granted a divorce from defendant Charles Orville Anderson, Jr., on the ground of indignities. The decree awarded her custody of the one child born of the marriage, a daughter, Candace Reeve Anderson, then twelve years of age. The decree further provided that defendant pay her $80.00 per month for child support, $20.00 per month alimony and $250.00 as her attorney's fee. In 1964, when Candace was fourteen years of age, plaintiff filed and presented a motion praying the court to increase the original allowances. That motion was denied.

On March 1, 1968, plaintiff filed the motion which has given rise to this appeal, alleging therein that the conditions and circumstances of the parties have materially changed in that Candace is "now" seventeen years of age (her 18th birthday was June 20, 1968); that she would graduate from high school in June of 1968, and that she desired to attend Washington University in St. Louis, Missouri. Additional allegations were to the effect that plaintiff's income was not sufficient to provide Candace's needs and future education but that defendant could do so out of his earnings and property inherited from his father, sufficient for those purposes. The prayer of the motion is for modification of the divorce decree by an appropriate increase in plaintiff's alimony and child support allowances. On May 24th, after hearing evidence on the motion, the trial court denied it, but allowed plaintiff her attorney's fee in the sum of $250.00, and costs. This appeal duly followed.

Plaintiff has not remarried. Since the divorce she has been employed as a secretary for four practicing lawyers in Kansas City, Missouri, earning take home pay of $372.46 per month out of which she tries to maintain a checking account of approximately $200.00 She owns an automobile, but no additional property of any kind other than household goods. Her earnings, together with the $20.00 monthly alimony and $80.00 monthly for child support, are the only source available for the support of herself and Candace.

Defendant has remarried and his present household consists of himself, his present wife, and her daughter—a child by a former marriage. He is presently employed by Missouri-Kansas Chemical Company, as a traveling salesman working on commission. Despite defendant's claim that his income has decreased, it clearly appears from his own federal tax returns that his net (adjusted gross) income for 1966 was $3,108.88, and that for 1967 it was $5,542.-97. Since January, 1968, he received additionally the sum of $150.00 per month (subject to payment of taxes, insurance and repairs) as rental for a house he

acquired under circumstances later to be noted. The present wife is gainfully employed and has gross earnings of approximately $4,800.00 a year.

At the time the motion was heard Candace was a senior attending Shawnee Mission East High School, from which she would graduate on the following 29th of May. She had a B average and was in the top one-fifth, or upper twenty per cent, of her graduating class. Ever since attending junior high school her field of interest has been the fine arts and she has been taking as many art courses as possible. For two years she was on the staff of the high school year book and was art editor of the publication. She has done paintings in practically all media, including oils, water colors and acrylic. She has exhibited them in high school, won a contest in her sophomore year and has sold some of her paintings. Candace testified that she had discussed her college plans with her father; that she had always been lead to believe that she would attend college; and that there was never any question in her mind that she was going to college. In making her plans she considered several colleges and universities and discussed them with her mother and her art teacher at Shawnee Mission, who is Art Counsellor for the entire Shawnee Mission District and President of the State Art Teachers Association.

Particular effort was made to select a school of a character that would be suitable for her individual needs and future plans. In this connection Candace testified under cross-examination as follows:

"Q. Candy, did you take, actually take into consideration at all what your father may be able to pay toward your education?

A. No, but I did take into consideration that this would be my career. I wanted to get the best training available. I will probably be working many years after college, and since it will probably be my work for the rest of my life I want the best available opportunity to get into that field and do my best.

Q. What was your thinking if in fact he couldn't afford it?

A. That I would work for a few years until I could afford it myself."

After plaintiff had investigated the quality of art instruction provided by the various colleges and universities, she finally decided that the school of art at Washington University was the best in the area for her daughter's particular requirements and that Candace should complete her education at that institution. It was also Candace's choice as the school she would like to attend. Plaintiff reached her decision after she and Candace had checked the art school at the University of Kansas, which they found had declined both in the quality of work done and its rating. They also visited Kansas State University, but found that it has no real school of art since their art department is divided between the home economics department and the draft engineering department. The University of Missouri, both at Columbia and Kansas City, was also considered, but according to the evidence, neither branch has an art school of any note. Washington University's School of Art is considered one of the best in the entire country. Plaintiff testified: "A person graduating from there is almost assured of finding a position in the fine arts field. And upon visiting it the work that we saw that was done by the students was the type of work that was done in her line." After making their decision, Candace applied to Washington University for admission, has been accepted, and has received written confirmation of her acceptance. Several weeks prior to the hearing her father talked to her in regard to whether or not she had or had not been accepted by Washington, and there was discussion with him, at that time, regarding the fees at Washington. Defendant inquired of Candace, "If it wasn't a little expensive" and asked her, "How I thought I was going to be able to go there."

The cost of attending the fine arts school at Washington University is materially higher than at the other area universities as might be expected, considering that it maintains superior facilities and that it is not a publicly supported institution. The tuition charge amounts to $1,900.00 for the school year. The cost of room and board at the lowest double room figure is $1,165.00 per school year. From figures obtained at the school, the cost of art supplies and books for the school year is estimated at $300.00. These fixed and necessary charges total $3,365.00. Plaintiff explained that Candace would need additional sums for clothing, cleaning and grooming, incidentals, medicine and medical care, and transportation to and from her home. She is having dental work done which requires one trip per month to the orthodontist. Summarizing, plaintiff testified that for a school year of nine months (September through May), those items would run to a total of $161.03 per month (based on the average expended therefor in 1967), in addition to the $3,365.00 total cost of tuition, room and board, and school supplies. As for the remaining three months of the year (June, July and August), plaintiff requested the trial court to allow her $125.00 per month for Candace's maintenance.

The evidence discloses very material changes in the financial condition of defendant since the original decree of divorce was granted and since the hearing on plaintiff's motion in 1964, which was denied. Defendant's father, Charles Orville Anderson, Sr., died on July 23, 1967, survived by defendant as the sole heir of his estate. As such he inherited and is presently the owner of an eighty acre tract of real estate in Platte County located on the east side of U.S. Highway 71, at about 64th or 65th Street, in the vicinity of Breen Hills. It is encumbered only by the expenses of administration, such demands there may have been against the estate, and whatever estate taxes are assessed against it. The rental residence previously referred to is located on the tract. In addition defendant owns a lot in Taney County, also acquired by inheritance from his father. And, upon the death of defendant's father, two jointly owned U.S. bonds in face amounts of $1,000.00 passed to defendant. One bond was cashed and applied to funeral expenses but defendant still owns the other bond.

Harvey E. Dowd, the only witness to testify on the value of defendant's inherited eighty acres, was produced by plaintiff. He has been a real estate broker in Missouri since 1955 and in Kansas since 1956, has a cooperative license for Illinois, Oklahoma and Nebraska, and is engaged in the real estate and real estate development business. Since January 1, 1968, he has sold about three million dollars worth of real estate. He has personally owned real estate, including about a dozen farms. He has done sub-division work and is in the process of developing an extensive acreage in Lawrence, Kansas. As broker for Kansas University Medical Center he assembled most of the ground for its expansion program. He has done work for mortgage companies, appraisal work, is familiar with land values in Platte County, has made mortgages in Platte and Clay counties and is familiar with the value of unimproved and vacant lands in Platte County.

At plaintiff's request Mr. Dowd examined the farm land inherited by defendant, making two trips for that purpose. Testifying, he described the tract as a cornering eighty on the west side of the north and south street and on the north side of the east and west street. The soil is a heavy clay, which is considered especially suitable for building purposes. The land is rolling and lends itself to the building of split level houses, which are presently "the best market." Properly sub-divided, all the land could be utilized and there would be no waste whatever. There is one residence on the property, a ranch style three bedroom home, which the witness did not examine and on which he would not attempt to place a value. (This

is the house previously referred to. It had been the home of plaintiff and defendant during their married life, and was where Candace lived for the first twelve years of her life.) Mr. Dowd testified that there is a lot of development in the immediate area and that this area is just beginning to grow. He placed the location of the tract as being between six and eight miles from Mid Continent International Airport, about three blocks from U.S. Highway 71, and about midway between Kansas City and Mid Continent. He stated that "a lot of men right now (are) looking for ground" in that area. He testified that in his opinion the *bare minimal* net value of defendant's Platte County land (exclusive of the residence on it) is $206,000.00.

Testifying on his own behalf defendant stated that he "guessed" that the estate is now in probate and that "just generally speaking" he had discussed the value of his Platte County land with a couple of real estate people, who had "ideas" as to what its value was. Upon objection that defendant's conversation with those persons would be hearsay, his counsel abandoned further inquiry in that direction, and defendant made no further effort to testify or produce any evidence as to the value of his real estate. In his answers to plaintiff's interrogatories filed March 16, 1968, he had stated, "The real estate has not been appraised and I do not know the reasonable value of same." In the same answer he further stated that "Said real estate is encumbered with the expense of administration and demands against the estate of Charles Orville Anderson, deceased, and is also encumbered with whatever federal and state inheritance taxes as (sic) assessed against same." In his oral testimony defendant made no effort to show that there were any claims pending and unpaid against his father's estate. On cross-examination defendant gave answers as follows:

"Q. You were aware of the fact that your Daughter was graduating from high school? You've been aware of that for some years when she would graduate?

A. That's true.

Q. And you knew she was planning on going to college did you not?

A. I've been told she was planning on going to college.

Q. There was never any doubt in your mind was there?

A. Yes, sir. If I had to pay the bill there was a big doubt in my mind."

The principal question for decision presented in this appeal is whether the attainment of college age by the child, her need for a college education, and defendant's inheritance of his father's estate, constitute substantial changes of condition, which require modification of the original decree. Although plaintiff's motion to modify prayed an increase in her alimony, she makes no point in her brief respecting that issue and we consider it abandoned.

As this court said in Sportsman v. Sportsman, 409 S.W.2d 787, it is our duty in this appeal to determine the facts from the record as in a trial de novo and render the judgment that should have been rendered. The law applicable to the controversy is neither complex nor uncertain and has been well settled by our courts. It is axiomatic that a father has the duty and obligation both under the common law and by statute to support and provide for the reasonable needs of his minor children. Lodahl v. Papenberg, Mo. Sup., 277 S.W.2d 548, and cases cited; that such duty is not affected or diminished by the economic condition of the children or the wife; Riesenmey v. Riesenmey, 236 Mo.App. 551, 155 S.W.2d 505; Mathews v. Mathews, Mo.App., 337 S.W.2d 529; Slaughter v. Slaughter, Mo.App., 313 S.W. 2d 193; Broemmer v. Broemmer, Mo.App., 219 S.W.2d 300; and that whenever the circumstances and conditions affecting the welfare of the child of divorced parents have undergone such changes as to re-

quire it, and the financial condition of the father is such as to permit it, the court should adjust existing provisions for the care and custody of such child to meet the changed situation confronting the parties. Section 452.070 V.A.M.S.; Bettinger v. Bettinger, Mo.App., 355 S.W.2d 354.

A child of divorced parents is entitled to an allowance for more than the bare necessities of life if the circumstances so warrant. Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189. In Nelson v. Nelson, Mo.App., 357 S.W.2d 223, the court said: "It is clear from the evidence in this case that Valle is entitled to an allowance for his support in excess of the bare necessities of life. The evidence shows that his father is a man of means, and under the circumstances shown, Valle is entitled to be maintained according to the station in life occupied by a person of his father's financial standing. It is not unreasonable for such a child to be sent to private schools, attend summer camps, and to enjoy certain privileges not usually had by boys whose fathers are not as able to provide such advantages." In the case of Butler v. Butler, Mo.App., 262 S.W.2d 330, the court held: "The amount to be allowed for the support of the minor children of divorced parents generally rests within the sound discretion of the court. In exercising this discretion the court should consider the needs of the child, his or her station in life, and the financial condition of the father."

The cost of a child's education is a proper factor to be considered by the court in making allowance for his support. In Bettinger v. Bettinger, supra, the St. Louis Court of Appeals affirmed an order increasing child support from $30.00 to $75.00 per week to defray the cost of the child's attendance in a private school. The court there said: "We hold that the increased expense of the child, caused in the main by additional educational expenses, together with the substantial increase in the plaintiff's income, constitute sufficient change of condition so that it cannot be said that the trial court abused its discretion in decreeing modification." In Sportsman v. Sportsman, supra, this court held that a change of conditions giving rise to the cost of a college education was a proper matter of consideration in determining the amount of child support,[1] in language as follows: "As noted above, this condition has changed. Further, and more important, upon his graduation from high school the 17 year old boy desired to go to college. Such education is not unreasonable. The cost of education and the standard of living of the parties is properly considered in fixing the amount of an award for child support."

It is convincingly shown by the evidence that there have been radical changes in the circumstances surrounding the parties since the divorce was granted and since the first motion was denied. Candace has grown from a child of twelve into a young lady of eighteen. She has finished high school and is eager to complete an education that will adequately develop her talents and fit her for her chosen career. Her mother has carefully considered and selected a school that they both believe offers the best training available in the art studies Candace desires to pursue and would give her the best opportunity to fulfill her ambition in a field that will "probably be my work for the rest of my life." Attendance at that school naturally entails cost and the necessity of an additional source of funds to defray it.

Coincident with the change in Candace's personal situation, we find an equally marked change in the financial

---

1. For an exhaustive discussion of the question whether the cost of a college education should be included in awarding child support, see Calogeras v. Calogeras, Ohio Jur., 163 N.E.2d 713 and Jackman v. Short, 165 Or. 626, 109 P.2d 860. Also see Esteb v. Esteb, 138 Wash. 174, 244 P. 264, 246 P. 27, and Annotation—Allowance for Education of Child, 133 A.L.R. 902.

condition of her father. By inheriting his father's estate in 1967 he has become the owner of substantial property, his principal asset being the eighty acre tract in Platte County, which defendant admits he owns "in my own name". This real estate alone, according to the only evidence in the case, has a minimal net value of more than $200,000.00. Defendant does not contradict that figure by any evidence and disclaims to have any knowledge of what his real estate is worth. He is content to assert broadly that it is "tied up in probate" and is subject to estate costs, demands and estate taxes. However, there is nothing in the record to show that defendant's father had any debts of consequence and there is no proof of any demands against the estate. It does not appear that the rent received from the house on the inherited land has been applied to probate expenses. There is no evidence that the probate court has ordered defendant, as personal representative in charge of his father's estate, to take possession of the land and sell it for the payment of any debts or probate expenses. There is nothing in the record to show the amount of estate taxes, or to show that there was anything to prevent defendant from selling a portion of the property or pledging it as collateral to borrow the funds necessary to provide his daughter an education suitable to her talents and station in life. Furthermore, there is no proof that defendant has made any effort to obtain such a loan on the security of his property or that he has been denied it. If any proof of that nature existed, it was peculiarly within the knowledge of defendant and it was incumbent upon him to come forward with such evidence at the hearing in order to benefit from it. Although plaintiff has the general burden of proof, the burden of producing evidence peculiarly within his own knowledge was upon the defendant. Foster v. Aetna Life Insurance Co., 352 Mo. 166, 176 S.W. 2d 482.

Although we usually defer to the trial court in its exercise of discretion in matters of this nature, we can not do so in this instance. It is our finding and opinion that plaintiff has satisfactorily established that defendant is financially able to bear the expense of his daughter's attendance at Washington University without undue burden to himself. Consequently we do not believe that a just and equitable resolution of this controversy, such as will serve the welfare and needs of the minor child without hardship to her father, has been reached by the denial of plaintiff's motion. We therefore conclude that by reason of the changes of condition we have noted, and under all the circumstances shown in evidence, it has become defendant's legal duty to provide the funds necessary for his daughter's education and that plaintiff's allowance for child support should be increased accordingly, even if defendant has to mortgage or sell a portion of his property, or borrow the loan value of life insurance policies he carries which, as the evidence shows, have a cash surrender value of approximately $4,800.00. As stated in Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71:

"Whether or not the court's allowance is reasonable should be determined not only upon a consideration of defendant's income, but also upon the amount of property he owns. So long as the father, who is primarily liable for the support of his children, has property sufficient to meet their needs, the children should not be deprived of a decent home and adequate support. Converse v. Converse, 225 Iowa 1359, 282 N.W. 368. It will, indeed, be unfortunate if defendant finds it necessary to encumber or dispose of a part of his property in order to maintain his children. But it is better that they be properly maintained and educated during their tender years than be left an inheritance preserved at the expense of their present needs and comfort."

In reaching this conclusion we have considered additional suggestions by defendant to the effect that his standard of

living is lower than plaintiff's and his daughter's; that plaintiff's income is greater than his; that plaintiff is more able to pay her own attorney than he is; that witness Dowd gave inaccurate testimony; that plaintiff made no attempt to agree on an increase in child support before filing her motion; and, that he was not consulted in the selection of the college his daughter would attend. In none of these propositions do we find any merit, and we deem it unnecessary to make comment thereon, except the following. While it is true that ordinarily a father should decide the extent and nature of a child's education, this rule does not attend when the parents are divorced and the child is in the mother's custody. In the latter instance it is for the mother to decide what education the child should have. Esteb v. Esteb, 138 Wash. 174, 244 P. 264; Atchley v. Atchley, 29 Tenn.App. 124, 194 S.W.2d 252; Calogeras v. Calogeras, Ohio Juv., 163 N.E.2d 713. In the Esteb case the court observed:

"Whenever a father has the custody of a child, the law presumes that he will provide for the child education in that vocation for which it is best fitted, and which will enable it to meet the conditions of modern life. But can the courts indulge that presumption where the custody of the child has been taken from the father? It seems to us that the mother, while she has the custody of the child, being in daily contact with her, and knowing her talents and abilities, should be the one to determine what education she should have. Parents, when deprived of the custody of their children, very often refuse to do for such children what natural instinct would ordinarily prompt them to do. * * * Our conclusion is that, since the mother has the custody of this child, knows its character and ability, she is in position to determine what education it should have, (and) what course should be pursued, * * *".

The foregoing statement is typical of the rulings in Atchley and Calogeras which we have cited above.

It remains for this court to determine the amount by which the child support should be increased. In Point III of her brief, filed as appellant in case No. 25,107, plaintiff requests that we direct entry of a decree "increasing the amount allowed for child support from $80.00 per month to $375.00 per month for the nine months of the school year and $125.00 per month for the months of June, July and August." Our calculation shows that the payment of $375.00 for nine months aggregates a sum sufficient to pay only the total basic cost of the tuition, room and board, and books and supplies. This would indicate that plaintiff intends to provide the incidentals she testified Candace would need additionally. Accordingly, in directing entry of a new judgment in case No. 25,107, the sums to be allowed for child support will be limited to those plaintiff has signified will be sufficient. There is no controversy over the allowance of $250.00 as plaintiff's attorney's fee, and that award meets with our approval.

As stated in the beginning, case No. 25,167 is a separate proceeding arising on plaintiff's after-judgment motion for an allowance of suit money to prosecute her appeal in case No. 25,107. The motion is based on allegations that plaintiff is unable to pay the cost and expenses necessarily incident to the prosecution of the appeal, inclusive of the docket fee, cost of the transcript and printing of briefs, and her attorney's fee.

At the hearing the parties agreed that the evidence previously heard on the motion to modify should be considered on the motion for suit money. The only additional evidence heard was a statement by plaintiff's counsel, received by the court as testimony by an officer of the court, not required to be under oath, showing that the probable cost of the appeal would consist of the docket fee of $10.00, about

$107.00 for the transcript, $150.00 for printing appellant's original brief, $50.00 for printing the reply brief, and an attorney's fee with respect to which counsel stated: "It's my opinion that the reasonable value of attorney's fees to be rendered in this case would be $750.00." No evidence on the motion was offered by defendant. (As shown by the reporter's certificate, the actual cost of the transcript is $116.70.)

At the conclusion of the hearing the trial court allowed plaintiff suit money and attorney's fees in the amount of $500.00. In rendering the judgment the trial court commented as follows: "I'm allowing her $500.00 whether she uses it for a brief, Attorneys' Fees or what. According to Mr. Garnett's testimony his fee—his costs and fees for her would be around $1000.00. I'm taking into consideration the testimony heard before, and she's going to have to pay some of this herself, and I'm saying your client is going to have to pay to her $500.00. Now, if there's any more then Mrs. Anderson will have to pay Mr. Garnett this amount, and it will be her duty to pay for this cost, understand me?" Appealing from the judgment, plaintiff briefs only one point, quoted as follows: "Since the trial court found that the reasonable expense of the appeal will be $1,000.00, it was an abuse of discretion to require plaintiff, under the circumstances of this case, to pay half of that expense."

■■■ We find merit in plaintiff's contention. The trial court's above quoted comment amounts to an oral finding, based on Mr. Garnett's testimony, that plaintiff's total appeal expense would aggregate "around $1,000.00", but that "she's going to have to pay some of this herself." Pursuant to this declaration the trial court allowed only half the amount shown by the evidence to be reasonably required by plaintiff to prosecute her appeal. The record does not justify this action. It is undisputed that plaintiff has no funds or property except a checking balance of around $200.00, some household goods, and

an automobile essential to her employment. By contrast, defendant is shown to be an individual of comparative wealth acquired by inheritance from his father—well able to provide plaintiff with the suit money she requires. Our courts are firmly committed to the rule that a wife, whether guilty or innocent, shall not be denied her right of appeal, and that her husband must furnish her with "the means of attack or defense" if she is without means of her own. The long line of Missouri cases so holding begins with Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460, and includes Paxton v. Paxton, Mo.App., 319 S.W.2d 280; Zerega v. Zerega, Mo.App., 200 S.W. 700; Burtrum v. Burtrum, Mo. App., 200 S.W.2d 80; Price v. Price, Mo. App., 281 S.W.2d 307. Decided by this court in 1912, the Libbe case is considered landmark authority. In our opinion we said: "Defendant, his wife, had no means of her own, and unless she procured the money from her husband for her support and to carry on the divorce suit necessarily either would have had to abandon the suit or else resort to her family or friends for means. The law does not contemplate that a wife shall be reduced to a condition so hard. The ecclesiastical courts of England allowed suit money almost as a matter of course, and regulated the allowance to meet exigencies as they arose. Our statutes relating to alimony pendente lite and suit money are but a modern adaptation of the rules and practices of the ecclesiastical law. * * * The overruling of defendant's motion for alimony and suit money pending the appeal was not an exercise of sound discretion, and under all the circumstances of the case was a grievous wrong to defendant."

It is our conclusion that plaintiff is in reasonable need of the sum of $1,000.00 as suit money to defray her appeal costs and expenses, and that defendant should be required to provide her such funds.

The judgment in case No. 25,107 is reversed and the cause is remanded with

directions that the trial court enter a judgment, effective as of September 1, 1968, modifying the original decree of divorce by increasing the amount allowed as child support from $80.00 per month to $375.00 per month for the months of September through May, inclusive, of each year, and to $125.00 per month for the months of June, July and August of each year; and, further, that plaintiff have and recover of defendant the sum of $250.00 as attorney's fees, together with costs of the proceedings.

The judgment in case No. 25,167 is reversed and the cause is remanded with directions that the trial court enter a judgment that plaintiff have and recover of defendant the sum of $1,000.00 as suit money to defray her expenses and attorney's fees, all as prayed in her motion therefor, and costs.

All concur.