Lena Bernice **HOUSTON**, formerly Lena
Bernice Snyder, **Plaintiff-Appellant,**

v.

William H. **SNYDER**, **Defendant-Respondent.**

No. 8805.

Springfield Court of Appeals.

Missouri.

March 27, 1969.

W. Ray Daniel, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for plaintiff-appellant.

No appearance for defendant-respondent.

HOGAN, Presiding Judge.

The parties to this action were divorced in August 1966. The decree provided, among other things, that defendant would pay the sum of $120 per month as support for the parties' two minor children. Alleging that the "costs, expenses and requirements" of the children had increased substantially and that the payment provided for was inadequate, the plaintiff instituted this action to obtain an increase in child support. The trial court denied the motion and the plaintiff has appealed.

Plaintiff testified that she was divorced from the defendant on August 8, 1966. She was awarded custody of the two boys, Billy and Tommy, who were then ten and seven years of age. On September 17, 1966, Mrs. Houston married her present husband and for some time she worked at a hotel. She became pregnant and was obliged to leave her employment. The child of her second marriage lived only 24 hours but at trial time, January 23, 1968, plaintiff was still unable to work. We are not advised of the extent of her education or training.

Plaintiff testified extensively concerning the boys' needs and requirements. The older boy, particularly, had grown rapidly, and was now "taller than I am." Plaintiff estimated, based on "prices that it will cost me * * * and in some instances I haven't been able to afford," that Billy's clothing for one year would cost $300.96, and that a reasonable minimum for Tommy would be $161.56. Asked for her "best judgment" concerning her general expenditures in her sons' behalf, Mrs. Houston estimated her necessary outlay to be $1,708.40 per year for both.

Plaintiff's evidence was that both the boys had special needs. Billy, she testified, was born with a tendon or ligament which "doesn't run right in the foot." As a result, he must wear corrective shoes, and will have to do so "all of his life." Mrs. Houston estimated that Billy will require three pairs of these corrective shoes each year, and that

she will incur some expense in having them checked by a physician. Tommy was born prematurely, and as a result, developed a particular susceptibility to respiratory disease—bronchitis and croup. Tommy receives gamma globulin shots "to build his resistance up to colds and bronchitis and things of that nature." He "has a shot once a month", "[f]rom the beginning of September until the end of June."

Mrs. Houston also testified that her children have special interests which should be developed, if possible. Tommy has become interested in music, especially church music, but he has not learned to read music well. Plaintiff could buy a piano "for around $100.00" and could obtain instruction for Tommy for $104 per year. In addition, both boys are interested in sports, particularly in bowling, basketball and swimming, but plaintiff has been unable to afford those things for them. As a sort of "grand total" —the term is ours—Mrs. Houston estimated that she would need $189.57 per month to feed, clothe and house her sons adequately, and to attend to their special needs and develop their individual interests. The "very minimum", plaintiff said, at another point, "I feel that I could do on" would be $100 per month for each child.

The defendant's financial condition was developed in meticulous detail, but we will restate the evidence only in outline. Mr. Snyder was employed as a correctional officer by the U. S. Bureau of Prisons. From his payroll records, and his own testimony, it appears that his base pay in 1966 was $6,972.80, and that because of an in-grade pay raise and a general salary increase voted by the Congress, that base pay increased to $7,212.80 in 1967. After deductions, and taking into account premium payments for overtime, Sunday work and holiday pay, Mr. Snyder's earnings as a correctional officer were $6,329.18 in 1966, and $6,581.88 in 1967.

It was also shown that at the time of the divorce, the parties owned a house, some furniture and a car, all mortgaged. Shortly before the decree was entered, the parties executed a property settlement agreement. As material here, the property settlement provided that Mr. Snyder would assume all the parties' debts incurred during the marriage, that he would keep his "government life insurance" in force for the benefit of his sons, and that he would pay for four years' college education for both boys. It was further agreed that Mr. Snyder would pay $120 per month for the support of the two children, and that Mrs. Houston would convey her interest in the house to Mr. Snyder. This property settlement was not incorporated in the decree of divorce, but there is no question that it had been and was being performed at the time of trial.

It was shown that the house which the parties owned was being rented, and that the rent exceeds the mortgage payment by $10 per month. Mr. Snyder estimated that he now had an "equity" of "probably * * around fifteen, sixteen hundred dollars," which he could realize if the property were sold. It also appeared that in order to be able to educate his sons, Mr. Snyder was investing the sum of $30 per month in a mutual investment fund known as the "Keystone S-4." He testified that he had $352 in the fund, " * * * wouldn't miss it over a couple of dollars." Mr. Snyder's only other source of funds was a savings account with his present wife. Defendant explained the status of this savings account by saying that when he remarried, his wife was a "widow woman," who "had a little money." This money went into the savings account, which is in "both our names." Mr. Snyder can "draw out of it," but it is "her money."

Defendant offered a written statement showing his income and expenses. His "grand total net income" is $592 per month. He now pays $120 per month as child support; he makes monthly payments amounting to $141.65 on the debts he assumed at the time of his divorce, and all in all, Mr. Snyder estimates that he is "going in the hole" at the rate of $51.15 per month. This is not all the evidence touching the chil-

dren's needs and the defendant's resources, but it shows the kind of situation which is before us.

■ The appellant has argued her case factually, maintaining that on the record presented, a modification was clearly called for. It is true that awards for child support are subject to modification upon proof of a sufficient change of conditions, Hunter v. Schwertfeger, Mo.App., 407 S.W.2d 606, 608–609 [5], and the court may make an allowance in excess of the bare necessities of life where the circumstances justify it. As the principle is often put, the children are entitled to be maintained according to the station in life occupied by a person of the father's financial standing. McCullough v. McCullough, Mo.App., 402 S.W.2d 623, 628–629 [3]; Nelson v. Nelson, Mo. App., 357 S.W.2d 223, 226 [1]. Fundamentally, however, the amount to be awarded as child support is a matter resting in the sound discretion of the trial court.[1] The question before us is whether or not that discretion has been abused.[2]

In the first place, it must be remembered that in cases of this kind, the evidence—both as to the children's needs and the father's ability to provide—ordinarily consists of estimates, testimony which though admissible is in the nature of a conclusion.[3] Mrs. Houston's "best judgment" as to the "general expenses" she had "by way of supporting the two boys" is an example in this case. She estimated this expense in the following manner: "Food, $80.00 a month, including school lunches, and it would be $960.00 a year; rent, $30.00 a month, which doesn't pay half of our house, $360.00 a year; phone, $3.00 a month, which isn't half, $36.00 a year; utilities, $5.00 a month,

which isn't half, $60.00 a year; doctors and dentists, which I don't think would cover it, but I put down the least I felt they could go on, $200.00 a year for both; and bowling once a week, for William Lee, $1.15, and Thomas Walter, eighty-five cents a week, plus ten cents a week for refreshments between games, $92.40 a year. Total: $1,708.-40." This testimony was not substantiated or documented in any way. The defendant's evidence concerning his total expense is very similar.

■ We do not belittle this evidence, nor say that it could not constitute substantial evidence upon which to base an allowance for child support. It was not necessary for the plaintiff to prove each item with "* * * the particularity * * * which would be required were a creditor suing * * *." Strohm v. Strohm, 182 Cal. App.2d 53, 5 Cal.Rptr. 884, 886 [4]. "Accounting accuracy" is not required, Leibel v. Leibel, D.C.Ct.App., 190 A.2d 821, 822 [1, 2], but the fact remains that the parties' estimates and "best judgments" are only approximations. As such, they are subject to distortion and exaggeration, Anno., 1 A.L.R.3d 324, 338–339, § 8 [c], and need not be accepted by the trial court as concrete fact.

■ Assuming, however, that the parties' estimates are as accurate as they could make them in the circumstances, cogent reasons appear in support of the trial court's action. Granted that the property settlement agreement was in no way binding as to the amount of child support to be allowed, and granted further that the parties' circumstances could change significantly in a short period of time, still the agreement was recent and it dealt extensively with the mu-

---

1. Gianformaggio v. Gianformaggio, Mo. App., 341 S.W.2d 293, 297 [6]; Montgomery v. Montgomery, Mo.App., 257 S. W.2d 189, 197 [8]; 2 Nelson, Divorce & Annulment, § 14.84, p. 118 (Rev. vol. 1961); 24 Am.Jur.2d, Divorce & Separation, § 839, p. 951.

2. Royster v. Royster, Mo.App., 420 S.W. 2d 1, 4 [7] [8]; Bettinger v. Bettinger,

Mo.App., 355 S.W.2d 354, 359 [3]; Bradshaw v. Bradshaw, Mo.App., 317 S. W.2d 21, 22 [3]; Rinkel v. Rinkel, Mo. App., 204 S.W.2d 451, 454–455 [2].

3. Torrey v. Kraus, 149 Ala. 200, 43 So. 184, 185 [6]; Dilger v. Dilger, Tex.Civ. App., 271 S.W.2d 169, 171 [3, 4]; 32 C.J.S. Evidence § 546(59) c, p. 255.

tual obligations of the plaintiff and defendant. We must assume that the parties gave their future needs some consideration at the time they executed the agreement, and in our view it is in itself some evidence of what the parties considered reasonable. Nielsen v. Nielsen, 87 Idaho 578, 394 P.2d 625, 627; Anno., supra, 1 A.L.R.3d at 339–340, § 8 [d].

Moreover, we consider the award reasonable in view of the resources the defendant actually has available. It is true, as the plaintiff argues, that all the defendant's resources, and not merely his income, must be taken in consideration in determining his ability to pay,[4] but we believe the plaintiff overstates the defendant's total financial position. Mr. Snyder is not a man of independent means whose resources can be compared to those of the responsible fathers in such cases as Anderson v. Anderson, Mo.App., 437 S.W.2d 704 where the defendant Charles Anderson owned an unencumbered tract of land worth more than $200,000, or Nelson v. Nelson, supra, 357 S.W.2d 223, in which case James Nelson apparently had liquid assets in excess of $400,000. In addition to his salary as a correctional officer, and the $10 per month he receives as rent from the house, Mr. Snyder has an "equity" of "probably around fifteen, sixteen hundred dollars" in the house, an investment of $352 in a mutual fund, and a nebulous and undefined interest in a savings account to which he has made no contribution.

With regard to the "equity" in the house and the mutual fund investment, the defendant's avowed purpose is to provide his sons with a college education. Mr. Snyder realized, he testified, that the mutual fund investment alone was "not going to be enough" to send his sons to college, but he believed that "a certain amount of equity will build up" in the house, and "along with

what I contribute * * * I think that it will be pretty close *. * *."

The plaintiff suggests that these two modest assets could be liquidated to meet the defendant's outstanding obligations. She says this would be the "sensible thing" to do. We cannot agree. This is not a case in which the father is building up an inheritance for his children at the expense of their day-to-day needs. Some regard must be had for the obligations which the defendant assumed by reason of the property settlement agreement. Assuming that it was fair and equitable at the time it was executed, the property settlement agreement is binding on the defendant even though it was not submitted to the trial court for approval, Singer v. Singer, Mo. App., 390 S.W.2d 605, 608 [4]; Bishop v. Bishop, Mo.App., 162 S.W.2d 332, 335 [2–4], and the requirement that defendant furnish his sons with a college education is enforceable, even though it runs beyond their minority. Jenkins v. Jenkins, Mo.App., 257 S.W.2d 250, 254 [4], and see Anderson v. Anderson, supra, 437 S.W.2d 704. In our view of the matter, neither the "equity" in the house nor the mutual fund investment can be properly regarded as assets which might be liquidated to provide defendant with additional means to pay child support. The same is true we think, of the savings account. Defendant's interest in the savings account is so vaguely described, in fact, that we cannot properly evaluate it.

In this case, we think we must look to the defendant's earnings alone to determine his ability to pay. Mr. Snyder testified, and the trial court could reasonably have found, that his "grand total net income" was $592 per month. This includes the extra pay he earns by working at night, on holidays and Sundays, and takes account of his income from the house. Defendant testified that he allocates $168.50 per month

---

4. Nelson v. Nelson, Mo.App., 357 S.W. 2d 223, 226 [1–3]; McCarthy v. McCarthy, Mo.App., 329 S.W.2d 236, 241; Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71, 79 [10]; Anno., supra, 1 A.L.R.3d at 345–346, § 13.

to his sons. This includes $120 per month paid directly as child support, $30 for the "boys college," $4 allowance, and $8.50 which is "life insurance." In addition to this, Mr. Snyder was making regular payments totaling $141.65 per month on debts which he assumed by reason of the property settlement. The total debt for which defendant was responsible was $2,271.98 at trial time.

 We are inclined to discount one or two of the items which Mr. Snyder claims as expense allocated to his children; his testimony concerning their "allowance" and "entertainment" was rather vague. We are impressed, however, by the fact that if we consider the monthly payment of $141.65 which defendant is making on the debts he assumed, and the $150 per month which in our view the defendant is paying directly toward his sons' upkeep and education, the defendant's fixed expenses run $291.65 per month, or slightly more than 49% of his income. It is proper to take in consideration the defendant's debts and the payments with which he is burdened, Robinson v. Robinson, 268 Mo. 703, 712, 186 S.W. 1032; Butler v. Butler, Mo.App., 262 S.W.2d 330, 335 [7], and an award for child support should not be so great as to destroy the father's incentive or impair his position. Butler v. Butler, supra, 262 S.W.2d at 335 [6]; Anno., 1 A.L.R.3d 382, 399–400 § 8 [b]. Considering all the circumstances, we cannot say the trial court abused its discretion in refusing to increase the allowance for child support.

Finally, it is contended by the plaintiff that the allowance of an attorney's fee in the sum of $150 was grossly inadequate. We readily concede that the case was most ably tried and argued on appeal by plaintiff's counsel, and that in any view the allowance is not overgenerous. Nevertheless, as the cases cited point out, allowances for counsel fees in a case of this kind are largely discretionary to be exercised in view of all the circumstances of the parties. Copenhaver v. Copenhaver, Mo.App., 402

S.W.2d 612, 615. Considering the defendant's present circumstances, we cannot confidently say the trial court abused its discretion on this aspect of the case.

For the reasons indicated, the judgment is affirmed.

STONE and TITUS, JJ., concur.