William C. SUNDERWIRTH, Plaintiff-Appellant,

v.

Jean Sunderwirth WILLIAMS, Defendant-Respondent.

No. 10324.

Missouri Court of Appeals, Springfield District.

July 11, 1977.

Edward J. Murphy, Inc., Butler, for plaintiff-appellant.

Donald B. Russell, James R. Bickel, Russell & Brown, Nevada, for defendant-respondent.

HOGAN, Judge.

This appeal is taken from an order modifying a decree of divorce. Remarkably, the focal issues on appeal—except for the matter of attorney's fees—involve neither excessiveness nor inadequacy of the award made; the only real question is whether the trial court had authority to modify the decree as it did. Consequently, we undertake only such recountal of the facts as is necessary to an orderly disposition of the appeal.

William C. Sunderwirth, a practicing osteopathic physician, was divorced from his

wife, now Jean Williams,[1] August 16, 1968. Concomitantly, they executed an extensive "separation agreement." As premises, the agreement recites that the parties intend to settle all their property rights and their rights to custody of their four minor children, who are specifically identified. The defendant is given custody of the children. The plaintiff agrees to pay defendant the sum of $150 per month per child "until each child shall marry, attain 21 years of age, dies [sic], becomes self-supporting, or otherwise emancipated. In the event any child goes to college the child support for that child shall continue until her education is completed." The plaintiff further agrees to pay defendant the sum of $700 per month as support and maintenance during the parties' joint lives or until defendant remarries. Plaintiff also assigns his interest in three life insurance and two disability insurance policies in order to provide for the education, support and maintenance of the children in the event of plaintiff's death. The agreement specifically and in terms recites that the defendant shall "keep said . . . policies of insurance in force during the period of [plaintiff's] obligation to support any of said children." Otherwise, the agreement disposes fully of the parties' property and their rights therein.

The decree of divorce, entered August 16, 1968, does not incorporate the separation agreement, but recites a finding that a "contractual property settlement" was executed by the parties and a further finding that the agreement is reasonable and valid and a full and complete settlement of all the parties' marital and property rights. The only specific findings duplicating the recitals of the separation agreement are those declaring that the parties are the parents of four children: Paula Lynn, born September 23, 1953; Jama Beth, born July 1, 1955; Lisa Denise, born May 26, 1959, and Stacy Dawn, born July 11, 1962. In general terms, the decree finds the custody and maintenance provisions of the separation agreement ample and reasonable. The court in terms retains jurisdiction to enter further orders concerning the care, support, maintenance and custody of the children.

Defendant and the children lived well, even affluently by community standards, from the date of the divorce to the time this proceeding was begun in March 1975. As of January 1975 defendant was receiving $7,200 annually as child support, $8,400 annually as alimony, and $3,600 annually in payment of a promissory note made to her by the plaintiff as part of the property settlement. Defendant was employed as a secretary and bookkeeper at a $4,500 annual salary. Paula, the eldest child, was graduated from Central Missouri State University in 1975; defendant's evidence strongly indicates that she is now emancipated.[2] Jama Beth, the second child, was in her third year at our state university at Columbia at trial time. Lisa was a third-year high school student and Stacy was finishing grammar school. All three elder children owned or had automobiles. Defendant estimated that she spent $13,388 supporting her children in 1973, and $16,332 supporting them in 1974. Plaintiff contributed $7,200 annually to the payment of these expenses; the balance, defendant testified, had come from her "personal" funds.

Since the issue of excessiveness vel non is not raised, we need not comment on plain-

---

1. On this motion to modify, the parties were designated "plaintiff" and "defendant" as if this proceeding were a continuation of the original proceeding. We shall, for convenience, refer to Dr. Sunderwirth as the plaintiff and to Mrs. Williams as the defendant. The parties recognize this is a new and independent proceeding. *Hayes v. Hayes*, 363 Mo. 583, 589, 252 S.W.2d 323, 327 [8] (1952).

2. The testimony is conclusional, but it was received without objection or comment. "Q. So at the present time living in the home we will count Paula as now working and living away from home—right? A. Right." "Q. Your oldest daughter is now emancipated and she has a job and works away from home? A. That's correct."

tiff's financial condition beyond observing that he, too, seems to have prospered since the parties' divorce. Although the plaintiff testified that he "started out for all practical purposes—flat broke" after his divorce, the record shows unmistakably that his financial resources are extensive. Plaintiff's federal income tax return for 1974 indicates that he and his present wife had an adjusted gross income of $50,884.04.[3] Of this amount, plaintiff paid $19,046.05 to the defendant.

Defendant's present need for funds arose because she was, as are all parents, harassed by inflation and because she decided to remarry, which, of course, terminated her right to alimony. Defendant's motion to modify avers in substance that 1) her present condition has changed; 2) the children's needs have increased, and she is unable to support them on $150 per month per child; 3) that two of the children are now enrolled in and are attending an accredited college; 4) that defendant is "about to be" remarried and her alimony payments, "most of which were being used for the support of the children," will terminate; 5) that the expense for the support of the children has increased substantially to an amount in excess of $1,000 per month; 6) that the cost of maintaining insurance on the plaintiff's life has increased to $200 per month. Prayer of the motion was that plaintiff be ordered to pay the sum of $250 per month per child as child support "until each child shall marry, attain twenty-one years of age, dies [sic], becomes self-supporting or otherwise emancipated, or if attending college until completion of said education"; that plaintiff be ordered to pay the sum of $200 per month for insurance coverage protection, and that plaintiff be required to pay defendant the sum of $2,000 per year per child for the educational support of each said child as may be now or in the future attending any accredited college or university. There was an additional prayer for attorney's fees in a reasonable amount.

The trial court heard a great deal of diffusely presented evidence, which as we say, we shall not recount. The trial court took the cause under advisement, and on March 19, 1976, entered an order finding that there had been such a change of circumstances as to make the original decree unreasonable. The court further found that "the necessary and proper amount of child support for each of the children . . is $250 per month per child until each respective child shall marry, attain twenty-one (21) years of age, die or becomes self-supporting," and added that in the event any such child enrolls in an accredited college or university such payments shall continue until such child's education is completed. The court further found that the provision of the separation agreement concerning the life insurance policies was a provision relating to the support of the children and was, therefore, subject to modification by the court. Accordingly the trial court entered the following decree:

"1. Plaintiff . . . is ordered to pay the sum of $250.00 per month to Jean Williams for each minor child as child support to be paid each month until such minor child shall marry, attain twenty-one (21) years of age, die, becomes self-supporting or otherwise emancipated, or if attending college until completion of said education.

"2. Plaintiff . . . is further ordered to pay to Jean Williams the sum of $225.00 per month per child for each month each such child as may be now or in the future may attend any accredited college or university, for the educational support of said child, while attending college.

"3. Plaintiff . . . is further ordered to pay to Jean Williams the sum of $200.00 per month for the payment of premiums for the insurance policies as

---

3. This includes $5,400 paid to plaintiff's present wife, Karen, apparently by plaintiff's professional corporation.

stated in Paragraph 4 of the Separation Agreement . . . to provide protection for the education, support and maintenance of the children in the event of the death of [plaintiff]."

In this court the appellant plaintiff has briefed three points. The first of these is that the trial court exceeded its authority and erroneously declared and applied the law in requiring him to pay defendant "the sum of $225.00 per month per child for each month each such child as may be now or in the future may attend any accredited college or university, for the educational support of said child, while attending college." Plaintiff readily concedes that the cost of a child's education is a proper factor to be considered by the court in making allowance for his [or her] support, *Anderson v. Anderson*, 437 S.W.2d 704, 710 [5][6] (Mo. App. 1969), and admits that a husband may bind himself contractually to furnish his children with a college education, even though the term of the agreement runs beyond the child's minority. *Houston v. Snyder*, 440 S.W.2d 156, 160 [7–9] (Mo.App. 1969); *Jenkins v. Jenkins*, 257 S.W.2d 250, 254 [4] (Mo.App. 1953). Plaintiff's objection, paraphrased, is that the trial court lacked the authority to impose an open-end decretal obligation upon the plaintiff to continue educating his children beyond the date of their majority or emancipation. In support of his contention, plaintiff cites *Meyer v. Meyer*, 493 S.W.2d 42, 46 [3] (Mo. App. 1973), which holds that the emancipation of a minor operates ex proprio vigore to terminate duty of support, and *Block v. Lieberman*, 506 S.W.2d 485, 486–487 [1–4] (Mo.App. 1974), which holds that the rights of a dependent child who is emancipated or has reached his majority may not be enforced against the noncustodial parent by the custodial parent, but must be enforced by the child himself. We agree that to the extent the decree at hand purports to adjudicate an obligation to support an adult child it is void, regardless of plaintiff's consent to educate his children. *Martin v. Martin*, 539 S.W.2d 756, 757–758 [3–5] (Mo. App. 1976). The real difficulties with the decree entered here, however, are that a) it is not supported by substantial evidence, and b) it is too indefinite to be susceptible of enforcement.

Since *Anderson v. Anderson*, supra, 437 S.W.2d 704, was decided, we have taken it as settled law that a father may be liable to educate his child beyond the secondary or "high school" level. We are also aware that in *Anderson*, supra, 437 S.W.2d at 711–712 [9], it was held that a custodial mother, being in daily contact with her child, and being presumably familiar with the child's talents and abilities should determine what educational institution her child should attend. We do not believe, however, that the court meant to hold dogmatically that every father, regardless of his financial means, is required to bear the full expense of a college education for his child, nor to hold that every custodial mother has the unbridled discretion to expose every child to a college education regardless of the child's talents and aptitudes, nor to confer upon the custodial mother the unfettered right to permit her child to pursue whatever tentative intellectual discipline he fancies as far as he chooses. We do not believe any fixed, arbitrary principles could be laid down which would adequately state a father's duty to educate his child. As with all other allowances which are made under the Dissolution of Marriage Act, the trial court is vested with considerable discretion concerning the amount to be paid, cf. *In re Marriage of Schulte*, 546 S.W.2d 41, 46–47, and authorities cited nn. 6, 7 (Mo.App. 1977), but some evidentiary foundation must be laid for the exercise of that discretion. Without going into laborious detail, our survey of the general literature convinces us that in determining whether or not an allowance should be made for a college education, at least to the baccalaureate level, and in fixing the amount of the allowance, the trial court should consider the financial ability of the father; the ability and capaci-

ty of the child for college work; the nearness of the child to his [or her] majority; whether the child is self-supporting or not, and the father's willingness to provide for such education, as shown by some agreement or other indication on his part. Annot., 56 A.L.R.2d 1207, 1209, § 1 [b] (1957); 56–63 A.L.R.2d Supp. at 63–68 (1976). Moreover, we are convinced that the trial court has discretionary power to participate in the selection of an educational forum if the child's best interests will be served thereby. Annot., 36 A.L.R.3d 1093 (1971).

■ In this case there is no doubt that the plaintiff is a man of abundant means, nor is there any question that he has agreed to provide his children with an undergraduate college education. There is no showing however of the ability and capacity of the two younger children for college work, nor any convincing fact or circumstance tending to show the reasonable cost of support and maintenance of any of the children now attending college at the particular institution where they have matriculated or plan to enroll. In these two respects, the decree lacks evidentiary support.

■ It must also be borne in mind that decrees for the payment of money in dissolution (divorce) cases are subject to the requirement that a judgment must be sufficiently certain to be susceptible of enforcement in the manner provided by law. *Rodden v. Rodden*, 527 S.W.2d 41, 43–44 [6–8] (Mo.App. 1975); *Loomstein v. Mercantile Trust National Ass'n*, 507 S.W.2d 669, 670–671 [1–3] (Mo.App. 1974); *Bishop v. Bishop*, 151 S.W.2d 553, 557 [9, 10] (Mo.App. 1941). The particular paragraph of the decree ordering the payment of "$225.00 dollars per month per child for each month each such child as may be now or in the future may attend any accredited college or university, for the educational support of said child, while attending college," is undecipherable to us, even resorting to the pleadings and the property settlement. As noted, taken in connection with paragraph one (1) of the order, it purports to extend the plaintiff's

duty beyond the emancipation of his children, although by law, his duty of support terminates when his children reach their majority. Moreover, one is left to inquire whether or not the college or university is accredited, and by whom, and whether at the moment that child is "attending college." Execution upon this provision would require another hearing; it therefore is not sufficiently definite to be capable of enforcement.

The plaintiff further complains that the trial court erred in requiring him to pay defendant the sum of $200 per month to maintain insurance policies on plaintiff's life, maintaining that the court was without authority to do so, because plaintiff had never contracted to maintain such life insurance and could not lawfully be required to do so. Defendant responds that because the life insurance provision was intended as a provision for the support of the children, it was subject to modification regardless of the parties' agreement. The parties have briefed and discussed this point in terms of the contractual-decretal distinction elucidated in such cases as *LaFountain v. LaFountain*, 523 S.W.2d 847 (Mo.App. 1975), and the exception to that rule stated in *Williams v. Williams*, 542 S.W.2d 563, 566 [1–3] (Mo.App. 1976), and *Roberts v. Roberts*, 292 S.W.2d 596, 599 [7–9] (Mo.App. 1956). We are aware of the distinction, see Annot., 61 A.L.R.3d 520 (1975), but have the view that other principles may be controlling here. There is a principle that a father may not be required to support his dependent children, minors or incapacitated adults, after his death, *Gardine v. Cottey*, 360 Mo. 681, 710, 230 S.W.2d 731, 750 [28], 18 A.L.R.2d 1100, 1123 (banc 1950); *Fower v. Fower Estate*, 448 S.W.2d 585, 587 (Mo. 1970), and in other jurisdictions this principle has been held to bar an order requiring a noncustodial father to insure his life for the benefit of his children. See, e. g., *Laws v. Laws*, 164 Colo. 80, 432 P.2d 632, 635 [4–6] (banc 1967); *Riser v. Riser*, 7 Wash.App.

647, 501 P.2d 1069 (1972). On the other hand, there is authority that a trial court may require the noncustodial father to maintain life insurance as security for the payment of the obligations imposed on him by the divorce decree. See Annot., 59 A.L. R.3d 9, at 37–42, § 8 (1974). There is also a principle as above noted that a child must enforce his or her rights against a noncustodial parent in his own name upon attaining his majority or becoming emancipated. *Block v. Lieberman,* supra, 506 S.W.2d at 486–487. Neither of these principles has been advanced as a reason why the insurance agreement should be held valid or invalid, and we shall not discuss their application sua sponte. The trial court may wish to be advised in the premises upon further hearing.

Plaintiff also complains that the trial court erred in awarding the defendant attorney's fees in the amount of $1,256.62 and in requiring him to pay it. We find no abuse of discretion and the award of attorney's fees is affirmed.

Otherwise, for the reasons noted, the cause is reversed and remanded.

All concur.